**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISRAEL ALVARADO-HERRERA,<br>*Petitioner*,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney<br>General,<br>*Respondent.* | No. 18-70191<br><br>Agency No.<br>A206-023-796<br><br>OPINION |

On Petition for Review of an Order of an
Immigration Judge

Argued and Submitted September 16, 2020
San Francisco, California

Filed April 13, 2021

Before: Paul J. Watford, Michelle T. Friedland, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Watford

# SUMMARY[*]

## Immigration

The panel granted in part, denied in part, and dismissed in part, Israel Alvarado-Herrera's petition for review of an immigration judge's decision affirming an asylum officer's negative reasonable fear determination in reinstatement proceedings, and remanded with instructions.

As an initial matter, the panel concluded that it lacked jurisdiction to consider Alvarado-Herrera's contention that the Department of Homeland Security could not reinstate his 2013 expedited removal order because the order failed to comply with two regulatory provisions requiring certain signatures. The panel noted that the statute authorizing reinstatement of prior removal orders, 8 U.S.C. § 1231(a)(5), precludes most collateral attacks on the validity of the removal order being reinstated, unless the petitioner can show that a "gross miscarriage of justice" occurred during the earlier removal proceedings. The panel concluded that even that narrow sliver of jurisdiction is foreclosed when the underlying order was, as in this case, an expedited removal order. The panel explained the statute governing expedited removal orders, 8 U.S.C. § 1252(e), limits judicial review to three narrow issues, each of which must be raised in habeas corpus proceedings, concerning "whether the petitioner is an alien"; "whether the petitioner was ordered removed" under an expedited removal order; and whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident. Because

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Alvarado-Herrera did not raise any such challenge, and this was not a habeas corpus proceeding, the panel dismissed this portion of the petition for lack of jurisdiction.

The panel rejected Alvarado-Herrera's contention that the agency lacked the statutory authority to create the reasonable fear screening process for withholding of removal and Convention Against Torture claims in reinstatement proceedings, and that Congress intended every non-citizen to receive a full due process hearing before an immigration judge. The panel concluded that the agency's adoption of the reasonable fear screening process was based on a permissible reading of 8 U.S.C. § 1231(a)(5) and § 2242 of the Foreign Affairs Reform and Restructuring Act, as it represented a reasonable effort to reconcile the two statutes' competing demands of allowing immigration officials to quickly identify and resolve frivolous claims to protection, thereby recognizing Congress's desire to ensure the swift removal of non-citizens subject to reinstatement, while at the same time, addressing the United States' treaty obligations by making it possible for those who do have a reasonable fear of persecution or torture to receive a hearing before an immigration judge at which they can establish their entitlement to appropriate relief.

The panel rejected Alvarado-Herrera's contention that the reasonable fear screening procedures violate the Fifth Amendment's Due Process Clause because they do not afford non-citizens the right to present new evidence during the review hearing before an immigration judge. The panel wrote that Alvarado-Herrera misconstrued the nature of a review hearing, at which the immigration judge sits in an appellate capacity, reviewing the written record prepared by the first-instance decision-maker (the asylum officer). The panel explained that due process does not mandate the right

to present new evidence to an appellate tribunal when a litigant has been afforded a reasonable opportunity to present evidence to the first-instance decision-maker.  The panel also concluded that nothing in the record supported Alvarado-Herrera's contention that the immigration judge failed to review the asylum officer's determination *de novo*, as the regulations require.

The panel held that substantial evidence supported the immigration judge's determination that Herrera-Alvarado failed to establish a reasonable fear of persecution on account of a protected ground.  The panel wrote that violence perpetrated by a gang to avenge the death of one of its members, without more, does not constitute persecution on account of a protected ground.

The panel held that substantial evidence did not support the immigration judge's determination that Alvarado-Herrera failed to establish a reasonable fear of torture with the consent or acquiescence of a public official, given Alvarado-Herrera's specific assertions of police complicity in the 18th Street gang's violent acts.  Noting that the asylum officer refused to credit Alvarado-Herrera's assertions, which were based in part on media reports and common knowledge among Hondurans that it is well known that the police work for the gangs, that the police are allied with the 18th Street gang in particular, and that the police not only allow gang members to harm others but also provide information to gang members to help them find and kill people, the panel wrote that it was unclear what additional evidence the asylum officer expected Alvarado-Herrera to produce at that stage of the proceedings.  The panel observed that non-citizens in reinstatement proceedings who express a fear of returning to their home country typically appear for a reasonable fear interview within a short time of their

apprehension by immigration authorities, and that many, like Alvarado-Herrera, are being held in detention facilities and do not have legal representation. The panel wrote that, as a result, they cannot realistically be expected to produce for the asylum officer's review the kind of detailed country conditions evidence that would be introduced during a merits hearing before an immigration judge. The panel wrote that such a demand would be inconsistent with the purpose of a reasonable fear interview, which is simply to screen out frivolous claims for relief in as expeditious a manner as possible, and if a non-citizen provides an otherwise credible account concerning his fear of torture, his own statements can supply adequate support for claims about country conditions, at least for purposes of satisfying the ten percent threshold necessary to pass a reasonable fear screening interview. The panel remanded with instructions for the agency to provide Alvarado-Herrera a hearing before an immigration judge only as to the merits of his claim for protection under CAT.

## COUNSEL

Stacy Tolchin (argued) and Megan Brewer, Law Offices of Stacy Tolchin, Los Angeles, California, for Petitioner.

Dana M. Camilleri (argued), Trial Attorney; Sabatino F. Leo, Senior Litigation Counsel; Anthony P. Nicastro, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WATFORD, Circuit Judge:

Israel Alvarado-Herrera, a native and citizen of Honduras, reentered the United States illegally in 2017. The Department of Homeland Security (DHS) ordered him removed to Honduras after reinstating an earlier removal order that had been entered against him in 2013. Because Alvarado-Herrera expressed a fear of returning to Honduras, an asylum officer conducted a screening interview to determine whether he reasonably feared persecution or torture in his home country. The asylum officer determined that he did not have a reasonable fear of such harm, and an immigration judge affirmed that determination. Alvarado-Herrera petitions for review of the immigration judge's decision on several grounds, all of which we reject with one exception: We agree with Alvarado-Herrera that the immigration judge's finding that he lacks a reasonable fear of torture is not supported by substantial evidence.

I

Alvarado-Herrera first entered the United States illegally in May 2013. He was apprehended shortly after crossing the southern border and placed in what are known as expedited removal proceedings. Expedited removal proceedings involve, as the name suggests, a streamlined process through which certain non-citizens—such as those apprehended at or near the border soon after entry—may be removed from the United States without a hearing before an immigration judge. *See* 8 U.S.C. § 1225(b)(1). Expedited removal orders are entered by DHS immigration officers, not by immigration judges, and judicial review of such orders is severely curtailed. § 1252(a)(2)(A), (e). DHS entered an expedited removal order against Alvarado-Herrera and

removed him to Honduras pursuant to that order in June 2013.

In December 2017, Alvarado-Herrera reentered the United States illegally and was again apprehended shortly after crossing the southern border. Rather than issue a second expedited removal order, DHS decided to reinstate his earlier 2013 removal order. Congress has authorized reinstatement of prior removal orders as another streamlined process through which certain non-citizens may be removed from the country. The statute authorizing reinstatement provides as follows:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

To reinstate a prior removal order, an immigration officer must find that the individual in question: (1) is not a citizen; (2) was removed or voluntarily departed while subject to a prior removal order; and (3) reentered the United States illegally. 8 C.F.R. § 241.8(a); *see Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc). In this case, an immigration officer made each of the required findings against Alvarado-Herrera and reinstated his 2013 removal order.

Although § 1231(a)(5) states that a non-citizen whose prior removal order has been reinstated "is not eligible and may not apply for any relief under this chapter," regulations issued by DHS's predecessor agency carve out exceptions to that seemingly categorical prohibition. A non-citizen may be entitled to apply for withholding of removal or protection under the Convention Against Torture (CAT) at a hearing held before an immigration judge. But to obtain that hearing, a non-citizen must first pass a screening interview conducted by an asylum officer, during which the non-citizen must show that he or she has a "reasonable fear" of persecution or torture in the designated country of removal. 8 C.F.R. §§ 208.31(c), 241.8(e). If the asylum officer determines that the non-citizen has established a reasonable fear, the non-citizen is placed in "withholding only" proceedings before an immigration judge, during which the judge will hold a hearing on whether to grant the non-citizen withholding of removal or protection under CAT. §§ 208.2(c)(2)–(3), 208.31(e).

If the asylum officer determines that the non-citizen has *not* established a reasonable fear, the non-citizen may request review of that determination by an immigration judge. § 208.31(g). During the review hearing, the immigration judge conducts a *de novo* review of the record prepared by the asylum officer and may (but need not) accept additional evidence and testimony from the non-citizen. *Bartolome v. Sessions*, 904 F.3d 803, 812–13 (9th Cir. 2018). If the immigration judge affirms the asylum officer's adverse determination, as occurred here, the non-citizen may file a petition for review in the appropriate circuit court of appeals. *Ayala v. Sessions*, 855 F.3d 1012, 1015–16 (9th Cir. 2017).

Alvarado-Herrera expressed a fear of persecution and torture if he were returned to Honduras. As Alvarado-Herrera explained during his interview with the asylum officer, that fear was based on an incident in Honduras several years earlier in which a group of armed 18th Street gang members—dressed as police officers and displaying police badges—shot and killed the business owner for whom Alvarado-Herrera worked as a bodyguard, apparently in retaliation for the business owner's refusal to pay the gang's extortion demands. Alvarado-Herrera and his fellow bodyguards returned fire, killing one of the gang's members. One of the other bodyguards also died during the attack. Alvarado-Herrera himself suffered gunshot wounds and was hospitalized for two days. After leaving the hospital, he went into hiding out of fear that the gang would seek to kill him in retaliation for the death of one of its members during the attack. Two of Alvarado-Herrera's fellow bodyguards who survived the attack were later killed, allegedly by the gang, and Alvarado-Herrera learned from acquaintances that the gang continued to look for him.

The asylum officer found Alvarado-Herrera's account credible but determined that he had not established a reasonable fear of persecution or torture. As to persecution, the asylum officer found that Alvarado-Herrera failed to establish that the gang would target him because of a protected characteristic (race, religion, nationality, membership in a particular social group, or political opinion). As to torture, the asylum officer found that Alvarado-Herrera failed to establish that retaliatory violence from the gang would be perpetrated by or with the consent or acquiescence of a public official. Alvarado-Herrera requested review of the asylum officer's determination by an immigration judge, but the judge affirmed the determination on the same grounds given by the asylum officer.

Alvarado-Herrera filed a timely petition for review of the immigration judge's decision. We have jurisdiction to review Alvarado-Herrera's constitutional and legal challenges to the reasonable fear screening process as well as his factual challenge to the evidentiary support for the immigration judge's decision. *See* 8 U.S.C. § 1252(a)(1), (a)(2)(D), (a)(5), (b)(9); *Ayala*, 855 F.3d at 1018. As explained immediately below, however, we lack jurisdiction to review his collateral attacks on the validity of the 2013 expedited removal order.

## II

Alvarado-Herrera contends that DHS could not reinstate his 2013 expedited removal order because the order failed to comply with two of the requirements imposed by the regulation governing expedited removal, 8 C.F.R. § 235.3.

First, the regulation states that an expedited removal order "must be reviewed and approved by the appropriate supervisor before the order is considered final." § 235.3(b)(7). To implement that requirement, the form on which DHS issues expedited removal orders, Form I-860, has a designated line for the name and title of the supervisor granting approval, as well as a separate line for the supervisor's signature that states, "Signature of supervisor, if available." Directly below the signature line is a box accompanied by text that reads: "Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty)." On Alvarado-Herrera's 2013 expedited removal order, the name and title of the supervisor granting approval is typed in, but the line for the supervisor's signature is blank. Instead, the box below is checked to indicate that supervisory approval was obtained by telephone or other means. Alvarado-Herrera contends that his expedited removal order is not final (and is therefore

invalid) because it does not contain the supervisor's signature.

Second, the regulation states that, "[a]fter obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt." § 235.3(b)(2)(i). The record shows that an immigration officer served Alvarado-Herrera with Form I-860. Alvarado-Herrera contends that his expedited removal order is invalid because the record does not contain the back of Form I-860, which precludes us from determining whether he signed the form to acknowledge receipt, as the regulation requires.

We lack jurisdiction to entertain these arguments. The statute authorizing reinstatement of prior removal orders states that the underlying order "is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). We have held that this language precludes most collateral attacks on the validity of the removal order being reinstated, unless the petitioner can show that a "gross miscarriage of justice" occurred during the earlier removal proceedings. *Garcia de Rincon v. DHS*, 539 F.3d 1133, 1137–38 (9th Cir. 2008). But even that narrow sliver of jurisdiction is foreclosed when the underlying order is, as in this case, an expedited removal order. *Id.* at 1138–39. Judicial review of expedited removal orders is governed by § 1252 of Title 8, which provides that "no court shall have jurisdiction to review" an expedited removal order except as provided in subsection (e). 8 U.S.C. § 1252(a)(2)(A). Subsection (e) in turn limits judicial review to three narrow issues, each of which must be raised in habeas corpus proceedings: "whether the petitioner is an alien"; "whether the petitioner was ordered removed" under

an expedited removal order; and whether the petitioner can prove that he or she has lawful status in the United States as an asylee, refugee, or permanent resident.  § 1252(e)(2); *see DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1963–64 (2020) (rejecting a Suspension Clause challenge to this limitation).

Alvarado-Herrera's arguments challenging the validity of his 2013 expedited removal order do not fall within any of the categories of reviewable issues, and this is not a habeas corpus proceeding in any event.  We therefore dismiss this portion of Alvarado-Herrera's petition for review for lack of jurisdiction.  *See Pena v. Lynch*, 815 F.3d 452, 455–56 (9th Cir. 2016).

III

Alvarado-Herrera next challenges the legality of the reasonable fear screening process, both facially and as applied to him.

His broadest contention is that the screening process itself is unlawful because the agency lacked statutory authority to create it.  As noted above, the screening process requires a non-citizen to establish a "reasonable fear" of persecution or torture during an interview with an asylum officer.  Only if the non-citizen succeeds in making that showing may he or she apply for withholding of removal and protection under CAT in a hearing before an immigration judge.  In Alvarado-Herrera's view, Congress intended *every* non-citizen who expresses a fear of persecution or torture to receive a "full due process hearing" before an immigration judge, without first having to jump through the hoop of passing a screening interview conducted by an asylum officer.

We analyze this contention under the familiar two-step framework established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). At step one we ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. Here, the answer to that question is no.

Congress enacted § 1231(a)(5), the provision authorizing reinstatement, as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). Pub. L. No. 104-208, Div. C, Title III, § 305(a)(3), 110 Stat. 3009–546, 3009–599. Section 1231(a)(5) does not address whether non-citizens who express a fear of persecution or torture are entitled to a "full due process hearing" before an immigration judge on claims for withholding of removal and protection under CAT.

The provision might be read to suggest that no such entitlement exists, for it states that non-citizens subject to reinstatement are "not eligible and may not apply for *any* relief under this chapter." 8 U.S.C. § 1231(a)(5) (emphasis added). This language would suggest no need for any hearings before an immigration judge, since both withholding of removal and protection under CAT are forms of relief available "under this chapter," meaning Chapter 12 of Title 8.[1]

---

[1] The provision authorizing withholding of removal, now codified at 8 U.S.C. § 1231(b)(3)(A), appears in the same statutory section as § 1231(a)(5). Congress added the provision authorizing CAT relief two years after enacting § 1231(a)(5); it is found as a note following § 1231. *See* Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, Div. G, Title XXII, § 2242(b), 112 Stat. 2681–761, 2681–822.

Courts later held, however, that non-citizens in reinstatement proceedings *are* eligible for withholding of removal under § 1231(b)(3)(A), notwithstanding the language of § 1231(a)(5). *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831–32 (9th Cir. 2016). And in 1998, Congress authorized CAT relief without excluding non-citizens in reinstatement proceedings as eligible recipients. *See* FARRA § 2242(b)–(c), 112 Stat. at 2681–822; *Andrade-Garcia*, 828 F.3d at 831. Ultimately, the most that can be said at step one of the *Chevron* analysis is that § 1231(a)(5) is "silent or ambiguous" as to whether all non-citizens are entitled to a hearing before an immigration judge on claims for withholding of removal and protection under CAT. *Chevron*, 467 U.S. at 843.

Alvarado-Herrera offers two main arguments in response. First, he points out that Congress expressly authorized similar screening interviews in expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)–(B). He asks us to infer from the absence of any such authorization in § 1231(a)(5) that Congress did *not* intend to permit screening interviews in reinstatement proceedings. For the reasons just explained, however, we cannot draw that inference. It seems at least equally possible that Congress did not contemplate that *any* non-citizens subject to reinstatement would receive a hearing before an immigration judge on claims for withholding of removal, and statutory authorization for protection under CAT had not even been enacted yet. There was thus no reason for Congress to consider whether a screening mechanism should be set up to determine which non-citizens would be entitled to a hearing before an immigration judge and which would not. By contrast, Congress established a screening mechanism in the expedited removal context because it had expressly

authorized non-citizens in those proceedings to apply for asylum and withholding of removal. § 1225(b)(1)(A)(i)–(ii).

Second, Alvarado-Herrera contends that a series of out-of-circuit cases involving the rights of stowaways supports his position. The courts in those cases held, under statutory provisions that have since been amended, that the Attorney General could not adjudicate the asylum claims of stowaways through an informal interview conducted by an immigration officer while affording all other asylum applicants a full hearing before an immigration judge. *Selgeka v. Carroll*, 184 F.3d 337, 344–45 (4th Cir. 1999); *Marincas v. Lewis*, 92 F.3d 195, 200–01 (3d Cir. 1996); *Yiu Sing Chun v. Sava*, 708 F.2d 869, 874–77 (2d Cir. 1983). Those decisions turned on the fact that Congress had mandated the creation of a single, uniform procedure for adjudicating the claims of *all* asylum applicants, irrespective of their status. That statutory command, the courts concluded, left no room for the Attorney General to create a different procedure applicable to just one category of applicants based on their status as stowaways. Here, we have no comparable command from Congress mandating that all applicants for withholding of removal and protection under CAT shall receive a hearing before an immigration judge.

Moving to step two of the *Chevron* analysis, we ask whether the agency's adoption of the reasonable fear screening process "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. To answer this question, we consider two different statutes with somewhat conflicting aims: 8 U.S.C. § 1231(a)(5) and § 2242 of FARRA (codified in a note following § 1231). We think the choice to establish a reasonable fear screening process, *see*

8 C.F.R. § 208.31, is based on a permissible reading of both statutes, as it represents a reasonable effort to reconcile the two statutes' competing demands.

The enactment of § 1231(a)(5) in 1996 and § 2242 in 1998 tugged DHS's predecessor agency in opposite directions. On the one hand, by declaring in § 1231(a)(5) that non-citizens subject to reinstatement are "not eligible and may not apply for any relief under this chapter," Congress sought to expedite the removal of those who reenter the United States illegally after having been removed at least once before. *See Morales-Izquierdo*, 486 F.3d at 494. Affording a hearing before an immigration judge to every non-citizen who expresses a fear of persecution or torture could interfere with that objective. On the other hand, in enacting § 2242, Congress sought to effectuate the United States' obligations under CAT by declaring it to be "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA § 2242(a), 112 Stat. at 2681–822. Congress directed the agency to issue regulations implementing this policy, without excluding non-citizens in reinstatement proceedings from those eligible to apply for protection under CAT. FARRA § 2242(b)–(c), 112 Stat. at 2681–822.

The regulation the agency adopted in response achieves both of Congress's objectives. It allows immigration officials "to quickly identify and resolve frivolous claims to protection," thereby recognizing Congress's desire to ensure the swift removal of non-citizens subject to reinstatement. Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999). At the same time, a screening process addresses the United States' treaty

obligations by making it possible for those who do have a reasonable fear of persecution or torture to receive a hearing before an immigration judge at which they can establish their entitlement to appropriate relief.  Nothing in § 1231(a)(5) or § 2242 of FARRA forbids this general approach.  Indeed, we have previously praised the agency's regulation as "balancing the fair resolution of claims for relief from removal against Congress' desire to provide for streamlined removal of certain classes of individuals, including those subject to reinstated removal orders."  *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1079 n.8 (9th Cir. 2016).

Having permissibly chosen to fill a gap left by Congress by adopting a screening mechanism, the agency adopted screening procedures that are modeled on the procedures Congress adopted in the expedited removal context.  *See* 8 U.S.C. § 1225(b)(1)(B).  Every non-citizen who expresses a fear of returning to his or her home country is referred to a specially trained asylum officer for a non-adversarial interview, during which the non-citizen has the right to the assistance of counsel at no expense to the government. 8 C.F.R. §§ 208.1(b), 208.31(b)–(c).  The non-citizen must be advised of the nature and purpose of the interview and afforded an opportunity to present evidence supporting his or her claimed fear of persecution or torture, and the asylum officer must prepare a written record of the interview. § 208.31(c).  The non-citizen need show only a "reasonable possibility" of persecution or torture, which has been defined to require a ten percent chance that the non-citizen will be persecuted or tortured if returned to his or her home country. § 208.31(c); *Bartolome*, 904 F.3d at 809.  A non-citizen who receives an adverse determination from the asylum officer is entitled to seek *de novo* review of that determination before an immigration judge, and an adverse decision by the immigration judge is subject to an additional layer of review

in the court of appeals. 8 C.F.R. § 208.31(g); *Bartolome*, 904 F.3d at 812; *Ayala*, 855 F.3d at 1018. Collectively, these procedures reduce the risk that meritorious claims will be erroneously rejected at the screening stage.

Alvarado-Herrera contends that these procedures violate the Fifth Amendment's Due Process Clause because they do not afford non-citizens the right to present new evidence during the review hearing before an immigration judge. Alvarado-Herrera misconstrues the nature of a review hearing. In such hearings, the immigration judge sits in an appellate capacity, reviewing the written record prepared by the first-instance decision-maker (the asylum officer). Due process does not mandate the right to present new evidence to an appellate tribunal when a litigant has been afforded a reasonable opportunity to present evidence to the first-instance decision-maker.

Alvarado-Herrera also contends that the immigration judge failed to review the asylum officer's determination *de novo*, as DHS's regulations require. *See Bartolome*, 904 F.3d at 812. But the immigration judge acknowledged at the outset of the hearing that he was obligated to conduct "an independent review of the decision of the asylum officer." Nothing in the record supports Alvarado-Herrera's contention that the immigration judge failed to do so.

IV

We turn, finally, to Alvarado-Herrera's factual challenge to the immigration judge's decision—namely, his claim that the adverse reasonable fear determination is not supported by substantial evidence. To establish a reasonable fear, Alvarado-Herrera had to show that he faces at least a ten percent chance of being persecuted or tortured if he is returned to Honduras. *See Bartolome*, 904 F.3d at 808–09.

In our view, he did not succeed in making that showing as to the risk of persecution, but he did so as to the risk of torture.

The immigration judge found that Alvarado-Herrera failed to establish a reasonable fear of persecution because the record does not show that any harm Alvarado-Herrera might suffer at the hands of the 18th Street gang would occur on account of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.31(c). That finding is supported by substantial evidence. Alvarado-Herrera fears retaliatory violence from the gang because one of the gang's members was killed during the attack on Alvarado-Herrera's former employer, during which Alvarado-Herrera and his fellow bodyguards returned fire. He contends before us that this violence would amount to persecution based on an imputed political opinion, but during his interview with the asylum officer he specifically denied fearing harm based on any political opinions he held. Regardless, violence perpetrated by a gang to avenge the death of one of its members, without more, does not constitute persecution on account of a protected ground. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010).

The immigration judge found that Alvarado-Herrera also failed to establish a reasonable fear of torture because he did not show that any torture the gang might inflict would occur with the consent or acquiescence of a public official. *See* 8 C.F.R. § 208.18(a)(1); *Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017). That finding is not supported by substantial evidence, given Alvarado-Herrera's specific assertions of police complicity in the 18th Street gang's violent acts.

During his interview with the asylum officer, Alvarado-Herrera provided an account of his experiences in Honduras

that both the asylum officer and the immigration judge deemed credible. In addition, Alvarado-Herrera described conditions of widespread police corruption in Honduras. Based in part on media reports and common knowledge among Hondurans, he asserted that it is well known that the police work for the gangs, that the police are allied with the 18th Street gang in particular, and that the police not only allow gang members to harm others but also provide information to gang members to help them find and kill people. The asylum officer refused to credit these assertions because Alvarado-Herrera did not support them with additional corroborating evidence, and the immigration judge affirmed the asylum officer's determination without elaboration.

It is unclear what additional evidence the asylum officer expected Alvarado-Herrera to produce at this stage of the proceedings. Non-citizens in reinstatement proceedings who express a fear of returning to their home country typically appear for a reasonable fear interview within a short time of their apprehension by immigration authorities. *See* 8 C.F.R. § 208.31(b) (interview must generally be conducted within ten days of referral). Many, like Alvarado-Herrera, are being held in detention facilities and do not have legal representation. As a result, they cannot realistically be expected to produce for the asylum officer's review the kind of detailed country conditions evidence that would be introduced during a merits hearing before an immigration judge. *See, e.g.*, *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1185 n.7 (9th Cir. 2020). Nor would such a demand be consistent with the purpose of a reasonable fear interview, which is simply to screen out frivolous claims for relief in as expeditious a manner as possible. Thus, if a non-citizen provides an otherwise credible account concerning his fear of torture, his own statements can supply adequate support

for claims about country conditions, at least for purposes of satisfying the ten percent threshold necessary to pass a reasonable fear screening interview.

Alvarado-Herrera's statements to the asylum officer provided adequate support for his claims about the prevailing country conditions in Honduras. More specifically, Alvarado-Herrera's account of the attack by 18th Street gang members offered details that corroborated his claim of widespread police corruption and complicity. He noted that the gang members who carried out the attack were dressed in police uniforms and displayed police badges to gain access to a private residential complex. Those details do not prove police complicity in the gang's attack, but they do suggest that his assertions about the 18th Street gang's alliance with the police may be based on more than mere idle speculation or rumor. Put differently, they give rise to at least a ten percent chance that his claims about police complicity in gang violence may in fact be true.

If Alvarado-Herrera's assertions about police corruption and complicity are accepted as true at this stage of the proceedings, any reasonable adjudicator would be compelled to conclude that they suffice to establish a "reasonable possibility" that he may be subjected to torture with government acquiescence, as that term has been defined in the relevant regulation. *See* 8 C.F.R. § 208.18(a)(7) (government acquiescence "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity"). We have held that a public official need not have actual knowledge of the specific incident of alleged torture. "[I]t is sufficient that the public official is aware that torture of the sort feared by the applicant occurs and remains willfully

blind to it." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089 (9th Cir. 2020). And the acquiescence of low-level officials, such as corrupt police officers, can suffice. *Xochihua-Jaimes*, 962 F.3d at 1184–86; *Madrigal v. Holder*, 716 F.3d 499, 509–10 (9th Cir. 2013). Alvarado-Herrera's statements to the asylum officer establish at least a ten percent chance that he would be subjected to torture by 18th Street gang members with the acquiescence of local police officers.

In sum, we conclude that the immigration judge's decision to affirm the asylum officer's reasonable fear determination as to torture was not supported by substantial evidence. We remand this case to the agency with instructions to provide Alvarado-Herrera a hearing before an immigration judge only as to the merits of his claim for protection under CAT.

Alvarado-Herrera's motion to supplement the record (Dkt. No. 17) is DENIED. *See* 8 U.S.C. § 1252(b)(4)(A).

**PETITION FOR REVIEW GRANTED in part, DENIED in part, and DISMISSED in part; REMANDED with instructions.**