NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 1 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

M.R.A.[1],

          Petitioner,

  v.

MERRICK B. GARLAND, Attorney
General,

          Respondent.

No. 23-2596

Agency No.
A246-516-332

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 11, 2024
San Francisco, California

Before: WARDLAW, GOULD, and BUMATAY, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge BUMATAY.

M.R.A., a native and citizen of Honduras, petitions for review of the

immigration judge's ("IJ") negative reasonable fear determination. The IJ

concurred in the asylum officer's determination that M.R.A. was credible but

concluded that M.R.A failed to establish a reasonable possibility of persecution or

---

[1]     Petitioner requested, and the Government does not oppose, that we
refer to him by his initials in this disposition.

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

torture if removed to Honduras. We review the IJ's rulings for substantial evidence and will uphold the IJ's conclusions unless "any reasonable adjudicator would be compelled to conclude" to the contrary. *Hermosillo v. Garland*, 80 F.4th 1127, 1131 (9th Cir. 2023) (quotation marks and citation omitted). We have jurisdiction under 8 U.S.C. § 1252(a)(1). We grant in part and deny in part M.R.A.'s petition for review.

1.      Substantial evidence supports the IJ's determination that M.R.A. was not entitled to a full hearing on his withholding of removal claim because he failed to show a reasonable possibility of persecution on account of an enumerated ground. "[W]ithholding [of removal] depend[s] on a finding that the applicant was harmed, or threatened with harm, on account of a protected ground," such as membership in a particular social group. *Plancarte Sauceda v. Garland*, 23 F.4th 824, 833 (9th Cir. 2022). If mistreatment is "motivated purely by personal retribution," it is not "on account of" a protected ground. *Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013). Because the asylum officer deemed M.R.A.'s testimony credible, and the IJ concurred in that finding, we accept M.R.A.'s testimony as true. *See Hermosillo v. Garland*, 80 F.4th 1127, 1133 (9th Cir. 2023).

M.R.A. testified that he was recruited by the gang MS-13 as a child, and that gang members beat and threatened him many times. He described being burned, stabbed, and hit by gang members who sought to force M.R.A. to extort and kill on

2                                                                                  23-2596

behalf of the gang. When MS-13 members gave M.R.A. a pistol and a motorcycle and ordered him to kill, he fled to the United States. Since he left Honduras, M.R.A.'s brother was forced into hiding, and the gang has apparently asked his family members about M.R.A.'s whereabouts. M.R.A. fears that these gang members will kill him or force him to work for them again if he returns to Honduras.

M.R.A. also fears that he will be harmed in Honduras due to his cooperation with federal prosecutors in the United States. In 2022, M.R.A. was arrested in a drug distribution and conspiracy case, and he provided information to prosecutors regarding his gang-affiliated codefendants. These codefendants apparently learned of M.R.A.'s cooperation prior to their own deportations to Honduras. They threatened M.R.A., telling him that they would be waiting for him to return to Honduras.

M.R.A.'s testimony does not compel the conclusion he would suffer future persecution on account of a protected ground, here, his membership in a particular social group. *See Conde Quevedo v. Barr*, 947 F.3d 1238, 1243 (9th Cir. 2020) (rejecting proposed social group of informants because petitioner's testimony "shows only individual retaliation, not persecution on account of membership in a distinct social group"). The past and future harm M.R.A. describes is not linked to his membership in a particular social group; instead, it appears to be motivated by

23-2596

retaliation for his refusal to work for MS-13 and his cooperation with prosecutors in the United States. The agency's determination that M.R.A. failed to show a reasonable possibility that he will be persecuted in Honduras on account of a protected ground is therefore supported by substantial evidence.

2. The IJ's ruling that M.R.A. failed to show a reasonable possibility that he would be tortured in Honduras is not supported by substantial evidence. Protection under the Convention Against Torture ("CAT"), unlike withholding of removal, does not require that a noncitizen establish a nexus between the feared harm and a protected ground. 8 C.F.R. §§ 208.16(c), 208.18(a). Instead, "[t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" as punishment, intimidation, or coercion, if it is inflicted "by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Noncitizens who establish a reasonable possibility—at least a ten percent chance—of torture are entitled to a full hearing on this claim. 8 C.F.R. §§ 208.31(c), (g)(2); *Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1195 (9th Cir. 2021) (defining reasonable possibility in this context). Any reasonable adjudicator would be compelled to conclude that M.R.A. met this standard.

M.R.A. testified credibly that he was tortured in the past by members of the MS-13 gang. Between the ages of 14 and 16, M.R.A. was severely harmed by

gang members seeking to coerce him into working for them. M.R.A. suffered harsh beatings that left him with at least one broken bone and ongoing pain in his back and left lung. M.R.A. fears that the gang will torture and kill him if he returns to Honduras, and that the police would not protect him. He detailed at length the means by which the Honduran police actively participate in gang activities. Specifically, M.R.A. told the asylum officer that he did not report MS-13's violent actions to the police because "in my country, the police is not trustworthy if you go and tell the police they will go and tell the person who you tell the report and they will come and kill you." He further testified that "[t]he police in Honduras, they give the information out. It is not confidential. If you go and submit a report, they give that information to the gangs. They're affiliated." He also testified that "the police over there is corrupt," referring to Honduras. He reiterated that the Honduran police "are also involved in the gangs" and therefore cannot protect him from MS-13.

Despite crediting M.R.A.'s testimony, the asylum officer and IJ concluded that M.R.A. did not establish a reasonable possibility of torture because he failed to show that the Honduran government would acquiesce to torture. However, the record evidence compels the contrary conclusion. Police officers' active participation in gang activities can constitute government acquiescence to torture. *See Madrigal v. Holder,* 716 F.3d 499, 510 (9th Cir. 2013). In *Alvarado-Herrera,*

we reviewed a reasonable fear interview in which a noncitizen petitioner described his experiences in Honduras with "widespread police corruption" and gang violence. 993 F.3d at 1196. He asserted, "[b]ased in part on media reports and common knowledge among Hondurans, . . . [that] it is well known that the police work for the gangs, that the police are allied with the 18th Street gang in particular, and that the police not only allow gang members to harm others but also provide information to gang members to help them find and kill people." *Id.* We granted Alvarado-Herrera's petition because his detailed assertions about police cooperation with gangs offered "more than mere idle speculation or rumor," thereby giving rise to "at least a ten percent chance that his claims about police complicity in gang violence may in fact be true." *Id.* at 1197.

M.R.A. credibly testified that, as in *Alvarado-Herrera*, he was aware of and feared the active cooperation between the Honduran police and gangs. Like in *Alvarado-Herrera*, "[i]t is unclear what additional evidence the asylum officer expected [the petitioner] to produce at this stage of the proceedings." *Id.* At this initial screening stage, a petitioner "cannot realistically be expected to produce for the asylum officer's review the kind of detailed country conditions evidence that would be introduced during a merits hearing before an immigration judge." *Id.* "Thus, if a non-citizen provides an otherwise credible account concerning his fear of torture, his own statements can supply adequate support for claims about

country conditions, at least for purposes of satisfying the ten percent threshold necessary to pass a reasonable fear screening interview." *Alvarado-Herrera*, 993 F.3d at 1196–97.

3.     M.R.A.'s due process rights were not violated by the IJ's decision to grant him only a two-hour continuance prior to his immigration court proceeding. "We typically do not disturb an IJ's discretionary decision not to continue a hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005).  The IJ granted M.R.A. a two-hour continuance, and neither M.R.A. nor his attorney requested a further postponement.

**PETITION GRANTED IN PART, DENIED IN PART, AND REMANDED.[2]**

---

[2] M.R.A.'s Motion to Stay Removal (Dkt. No. 2) and Supplemental Motion to Stay Removal (Dkt. No. 9) are DENIED as moot.

*M.R.A. v. Garland*, No. 23-2596

BUMATAY, Circuit Judge, concurring in part and dissenting in part:

I largely agree with the majority here. M.R.A. hasn't shown an entitlement to withholding of removal or a due process violation. I dissent only on whether substantial evidence supports the immigration judge's ("IJ") decision to deny M.R.A.'s Convention Against Torture ("CAT") claim. While an admittedly closer question under our precedent, I would deny the petition on that ground as well.

To obtain CAT protection, "[t]he alien must prove not only that torture will more likely than not occur, but also that there is sufficient state action involved in the torture." *Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017) (simplified). Because M.R.A. seeks review of a reasonable fear interview, he only needs to establish a "reasonable possibility," or ten percent chance, that he'd be tortured with the acquiescence of state officials. *See Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1195, 1197 (9th Cir. 2021). But even with this lower threshold, M.R.A.'s claim still fails.

Substantial evidence supports the IJ's conclusion that M.R.A. hadn't shown a reasonable possibility of torture with the acquiescence of Honduran officials. M.R.A. claims that the Honduran police are "corrupt" and "part of" or "involved" with MS-13 and will alert gang members about police reports being filed against them and supply gangs with police "information." But these generalized statements

1

of police corruption aren't sufficient to compel the conclusion that government officials will acquiesce to M.R.A.'s torture.

It is true in *Alvarado-Herrera*, we concluded that a petitioner's "own statements can supply adequate support for claims about country conditions." 993 F.3d at 1197. Yet we didn't permit any broad testimony to meet this threshold. Rather, in that case, we relied on the fact the petitioner offered "*specific* assertions of police complicity in the 18th Street gang's violent acts." *Id*. at 1196 (emphasis added). There, the petitioner testified that a group of armed 18th Street gang members "dressed as police officers and display[ed] police badges" before opening fire at the petitioner and others. *Id*. at 1191. We concluded these "details . . . corroborated [the petitioner's] claim of widespread police corruption and complicity." *Id*. at 1197. Thus, even though the petitioner didn't submit direct evidence of the country conditions, the specificity of the petitioner's allegations "suggest[ed] that his assertions about the 18th Street gang's alliance with the police may be based on more than mere idle speculation or rumor." *Id.*

Here, M.R.A.'s testimony lacks the specificity to take this out of the realm of "mere idle speculation or rumor" of police corruption. *See id.* He provided no foundation for or examples of his allegations of police complicity. How did he gain this knowledge? Was it firsthand knowledge? Was it a rumor on the streets? Did he read about in the newspaper? We don't know. What we do know is that M.R.A.

2

testified that no member of the Honduran police has ever threatened or harmed him, that he never had any problems with the police, and that he doesn't fear harm from any Honduran public official. This record thus does not compel us to grant this petition on CAT grounds. *See Bartolome v. Sessions*, 904 F.3d 803, 811, 813 (9th Cir. 2018) (defining the substantial evidence and reasonable possibility standards).

I respectfully dissent.