**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE LUIS ALONSO-JUAREZ,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 15-72821

Agency No.
A072-709-355

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 4, 2022
Seattle, Washington

Filed September 8, 2023

Before: Mary H. Murguia, Chief Judge, and William A.
Fletcher and Mark J. Bennett, Circuit Judges.

Opinion by Chief Judge Murguia

## SUMMARY[*]

### Immigration

Denying Jose Luis Alonso Juarez's petition for review of an immigration judge's decision upholding an asylum officer's negative reasonable fear determination following the reinstatement of a prior order of removal, the panel held that: (1) the thirty-day deadline for filing a petition for review set forth in 8 U.S.C. § 1252(b)(1) is a non-jurisdictional rule; (2) Alonso's petition for review, which was filed within thirty days of the conclusion of his reasonable fear proceedings, but not within thirty days of the reinstatement of his removal order, was timely; and (3) the reasonable fear screening procedures established by regulation are consistent with the statutory provisions governing withholding of removal.

In light of *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023)—holding that a neighboring exhaustion provision in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(d)(1), was not jurisdictional—the panel held that the thirty-day deadline for petitions for review set forth in 8 U.S.C. § 1252(b)(1) is a mandatory, non-jurisdictional rule.

The panel concluded that *Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012), in which this court held that a petition arising from a reinstated order of removal is not ripe for review until the reasonable fear proceedings have concluded, was not clearly irreconcilable with the Supreme Court's decisions in *Nasrallah v. Barr*, 140 S. Ct. 1683

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

(2020) and *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021).  The panel declined to adopt the Second Circuit's contrary interpretation in *Bhaktibhai-Patel Patel v. Garland*, 32 F.4th 180 (2d Cir. 2022)—that a timely petition must be filed within thirty days of the reinstated order of removal—because doing so would raise grave constitutional concerns by effectively cutting off judicial review of reasonable fear and withholding-only decisions.  The panel also rejected as unworkable the government's suggestion of putting petitions in abeyance pending completion of reasonable fear or withholding-only proceedings.  Accordingly, the panel held that a reinstated removal order becomes final, and the 30-day period for filing a petition for review begins, only after the reasonable fear proceedings have concluded.

To the extent *Alvarado-Herrera v. Garland*, 993 F.3d 1187 (9th Cir. 2021), was unclear on this point, the panel held that the reasonable fear screening regulations, 8 C.F.R. §§ 208.31 and 1208.31, are not inconsistent with the statutory scheme for determining eligibility for withholding of removal.

The panel concluded that Alonso's petition was timely, and in a concurrently filed memorandum disposition, denied Alonso's petition on the merits.

## COUNSEL

Vicky Dobrin (argued) and Hilary Han, Dobrin & Han PC, Seattle, Washington, for Petitioner.

Shahrzad Baghai (argued), Trial Attorney, Office of Immigration Litigation; Sabatino F. Leo, Assistant Director, Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; United States Department of Justice, Washington, D.C.; for Respondent.

Kristin Macleod-Ball and Trina A. Realmuto, National Immigration Litigation Alliance, Brookline, Massachusetts, for Amici Curiae National Immigration Litigation Alliance, Center for Gender & Refugee Studies, Florence Immigrant and Refugee Rights Project, and Northwest Immigrant Rights Project.

Lee Gelernt and Anand Balakrishnan, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, New York; Cody Wofsy, American Civil Liberties Union Foundation, Immigrants' Rights Project, San Francisco, California; for Amicus Curiae American Civil Liberties Union.

# OPINION

MURGUIA, Chief Circuit Judge:

Jose Luis Alonso Juarez ("Alonso"), a native and citizen of Mexico, reentered the United States without inspection in 2003. The Department of Homeland Security ("DHS") ordered him removed to Mexico after reinstating an earlier removal order that had been entered against him in 1994. Because Alonso expressed a fear of returning to Mexico, an asylum officer conducted a screening interview to determine whether he reasonably feared persecution or torture in his home country. The asylum officer determined that Alonso did not have a reasonable fear of such harm, and an immigration judge ("IJ") affirmed that determination. Thirty days after the IJ's decision—but more than thirty days after the date his removal order was reinstated—Alonso petitioned for review on several grounds, including that the reasonable fear screening procedures established by federal regulation are inconsistent with the statutory provisions governing withholding of removal.[1]

In briefing and at oral argument, the government conceded that Alonso's petition was timely pursuant to *Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012), in which we held that a petition is not ripe for review until the aforementioned reasonable fear proceedings have concluded. Under *Ortiz-Alfaro*, a petition for review should be filed within thirty-days of the conclusion of reasonable fear proceedings. *Id*. at 958.

---

[1] Alonso challenges the IJ's decision on two other grounds that we address in a memorandum disposition filed concurrently with this opinion.

Several weeks after we heard oral argument, the government filed a letter under Federal Rule of Appellate Procedure ("FRAP") 28(j) challenging our jurisdiction to entertain Alonso's petition for review, and those of petitioners similarly situated. The government's position that we lacked jurisdiction was based on a Second Circuit decision that held that recent Supreme Court precedent—*Nasrallah v. Barr*, 140 S. Ct. 1683 (2020) and *Johnson v. Guzman Chavez*, 141 S. Ct. 2271 (2021)—requires petitioners to file their petition for review of an IJ's reasonable fear determination within thirty days of the removal order's reinstatement. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 193 (2d Cir. 2022). Under the Second Circuit's standard, Alonso's petition for review would be untimely.

Months later, the government changed course based on subsequent Supreme Court precedent—*Santos-Zacaria v. Garland*, 598 U.S. 411 (2023)—holding that a neighboring provision in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(d)(1), was not jurisdictional. *Santos-Zacaria*, 598 U.S. at 416. The government now contends that the reasoning in *Santos-Zacaria* overrules our prior holding that 8 U.S.C. § 1252(b)(1), the INA provision that establishes the thirty-day filing deadline for petitions like Alonso's, is jurisdictional. *See, e.g.*, *Magtanong v. Gonzales*, 494 F.3d 1190, 1191 (9th Cir. 2007). Alonso agrees that the thirty-day filing deadline is no longer jurisdictional, but still disagrees that his petition was untimely. Alonso continues to maintain that *Ortiz-Alfaro*'s holding that petitions for review become ripe upon the conclusion of reasonable fear proceedings remains good law.

Today, we reach three conclusions. First, we agree with the parties that, under *Santos-Zacaria*, the thirty-day

deadline set forth in 8 U.S.C. § 1252(b)(1) is a non-jurisdictional rule. Second, we conclude that neither *Nasrallah* nor *Guzman Chavez* is "clearly irreconcilable" with our decision in *Ortiz-Alfaro. See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Accordingly, Alonso's petition for review, which was filed within thirty days of the conclusion of his reasonable fear proceedings, is timely. Third, on the merits, we reject Alonso's argument that the reasonable fear screening procedures established by regulation are inconsistent with the statutory provisions governing withholding of removal. To the extent our holding in *Alvarado-Herrera v. Garland*, 993 F.3d 1187 (9th Cir. 2021), was unclear on this point, we clarify today that the reasonable fear screening proceedings are not inconsistent with the statutory provisions governing withholding of removal. We therefore deny Alonso's petition.

## I.

Alonso is a native and citizen of Mexico. He first unlawfully entered the United States in January 1990. Alonso first came to the attention of immigration officials in August 1992, following an Oregon state drug conviction. He was removed to Mexico in September 1992, but he later returned and reentered without inspection. In March 1994, Immigration and Naturalization Service officers apprehended Alonso and charged him with being subject to removal for entering the United States without inspection. The IJ issued an order of removal at an in absentia hearing in December 1994. In December 1998, Alonso voluntarily returned to Mexico based on the 1994 removal order, but he re-entered the United States, again without inspection, in August of 2003.

In June 2015, Alonso was arrested and detained based on the December 1994 removal order. DHS reinstated the removal order in July 2015, and referred Alonso to a reasonable fear screening interview with an asylum officer after he expressed a fear of persecution and torture if removed to Mexico.

The asylum officer found Alonso's testimony credible but concluded that Alonso failed to establish a reasonable fear of persecution or torture. Alonso requested that an IJ review the asylum officer's reasonable fear determination. In September 2015, the IJ affirmed the asylum officer's negative reasonable fear determination. Alonso then filed a petition for review within thirty days of the IJ's affirmance of the negative reasonable fear decision.

## II.

A prior removal order can be reinstated for noncitizens who "reenter[] the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5). A reinstated order of removal "is not subject to being reopened or reviewed, [and] the [noncitizen] is not eligible and may not apply for any relief under this chapter." *Id*.

Despite this seemingly categorical prohibition on relief from removal, noncitizens subject to a reinstatement order are eligible to apply for statutory withholding of removal and protection under the Convention Against Torture ("CAT") at a hearing before an IJ. *See Alvarado-Herrera*, 993 F.3d at 1190. To obtain that hearing, the noncitizen is placed in the reasonable fear proceedings set forth in 8 C.F.R. §§ 208.31 and 1208.31, where the noncitizen must first pass a screening interview with an asylum officer. *Id*. at §§ 208.31 and 1208.31. In that screening interview, the noncitizen

must show a "reasonable fear" of persecution or torture if they are returned to their home country. 8 C.F.R. §§ 208.31(a) & (c), 1208.31(a) & (c), 1241.8(e).[2]

If the asylum officer determines that the noncitizen has shown a reasonable fear of persecution or torture in the screening interview, the asylum officer places the noncitizen in what are known as "withholding-only proceedings" by referring the noncitizen to an IJ for a hearing. 8 C.F.R. §§ 208.31(e), 1208.31(e). In contrast to a formal removal proceeding, at which the noncitizen can pursue asylum and other forms of relief from removal, withholding-only proceedings are more limited in that the noncitizen may seek only withholding of removal and CAT protection. *Id*. §§ 208.31(e), 1208.31(e). After the hearing, the IJ determines if the noncitizen is in fact eligible for withholding of removal or CAT protection. *Id*. §§ 208.31(e), 1208.31(e). If the IJ determines the noncitizen is not eligible for either form of relief, the noncitizen may appeal the IJ's determination directly with the Board of Immigration Appeals ("BIA"). *Id*. §§ 208.31(e), 1208.31(e).

On the other hand, if the asylum officer determines that a noncitizen does *not* have a reasonable fear, the noncitizen may seek review of the officer's determination by an IJ. *Id.* §§ 208.31(g), 1208.31(g). But the review hearing before an IJ of the asylum officer's negative reasonable fear determination is an abbreviated proceeding. *Bartolome v.*

---

[2] A noncitizen demonstrates a reasonable fear of persecution or torture by establishing "a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." 8 C.F.R. §§ 208.31(c) & (e), 1208.31(c) & (e).

*Sessions*, 904 F.3d 803, 813 (9th Cir. 2018).  Unlike the IJ hearing in withholding-only proceedings after an asylum officer's *positive* reasonable fear determination, the *review* hearing before the IJ is limited to a de novo review of the asylum officer's negative reasonable fear determination.  *Id.* at 812.  In other words, the noncitizen may not yet apply for withholding of removal or CAT protection at this review hearing.  And the IJ may, but is not required to, accept additional evidence.  *Id.* at 812–13; *see also Alvarado-Herrera*, 993 F.3d at 1195.

If the IJ disagrees with the asylum officer's negative reasonable fear determination, the IJ places the noncitizen in withholding-only proceedings for a hearing in which the noncitizen can apply for withholding and CAT relief.  8 C.F.R. §§ 208.31(g), 1208.31(g).  But if the IJ affirms the asylum officer's negative reasonable fear finding, the noncitizen may not apply for relief and may not petition for review from the BIA.  8 C.F.R. § 208.31(g)(1).  Instead, the noncitizen may *only* petition for review directly with the appropriate United States Court of Appeals within thirty days.  *Alvarado-Herrera*, 993 F.3d at 1191.

## III.

We first address whether we have jurisdiction to entertain Alonso's petition for review under 8 U.S.C §§ 1252(a)(1) and (b)(1).  Section 1252(a)(1) establishes that we are empowered to review a petition for review of a final order of removal.  And Section 1252(b)(1) clarifies that such a petition must be filed within thirty days of the final order of removal.  The jurisdictional question before us is two-fold: (1) whether the thirty-day deadline set forth in § 1252(b)(1) is jurisdictional rather than merely mandatory;

and (2) what constitutes a "final order of removal" that triggers the thirty-day deadline.

In their briefing, neither Alonso nor the government questioned our jurisdiction. The government wrote:

> This Court has jurisdiction to review the Immigration Judge's reasonable fear determination because she issued it in connection with a reinstated removal order. . . . The Immigration Judge's September 8, 2015 concurrence with the asylum officer's negative reasonable fear determination made the reinstatement order administratively final, and thus subject to review under 8 U.S.C. § 1252. *See Andrade-Garcia* [*v. Lynch*], 828 F.3d [829,] 833 [(9th Cir. 2016)]; 8 C.F.R. § 208.31(g)(1).

Similarly, neither party questioned our jurisdiction at oral argument.

Several weeks after argument, the government filed a letter pursuant to FRAP 28(j), notifying us of the Second Circuit's decision in *Bhaktibhai-Patel*. *Bhaktibhai-Patel* runs contrary to our holding in *Ortiz-Alfaro* on the issue of our jurisdiction over a petition for review of a reinstated order of removal. In *Bhaktibhai-Patel*, the Second Circuit held that under two recent Supreme Court cases—*Nasrallah* and *Guzman Chavez*—the time to file a petition for review of an IJ's negative reasonable fear determination runs from the date an order of removal is reinstated. 32 F.4th at 183–84. Recognizing that *Bhaktibhai-Patel*'s holding would depart from our court's precedent, the government asked us to assume jurisdiction arguendo and deny Alonso's petition

on the merits. But the government asked us to apply the reasoning in *Bhaktibhai-Patel* prospectively. Although the government asserted that we could assume jurisdiction in Alonso's case, it continued to advance its new position that we lacked jurisdiction in other similar cases pending before our court.

Because we must assure ourselves of our jurisdiction, we address it in this case. *Ayala v. Sessions*, 855 F.3d 1012, 1017 (9th Cir. 2017) ("We have jurisdiction to consider our own jurisdiction."). We asked the parties to file supplemental briefing on the issue of whether *Ortiz-Alfaro* remained good law, and subsequently, whether the thirty-day deadline ran from the conclusion of reasonable fear proceedings. And we held numerous cases in this court in abeyance pending our resolution of this issue in this case.

Months later, the government changed course—again—based on the Supreme Court's decision in *Santos-Zacaria*, which held that 8 U.S.C. § 1252(d)(1)'s exhaustion requirement is non-jurisdictional. Because the same thirty-day deadline provision in § 1252(b)(1) is also in § 1252(d)(1), and because there are important similarities between § 1252(d)(1) and § 1252(b)(1), the government moved for supplemental briefing on whether the thirty-day filing deadline remains jurisdictional after *Santos-Zacaria*. In its subsequent supplemental brief, the government asserted that the reasoning in *Santos-Zacaria* applies to § 1252(b)(1), thereby making the thirty-day deadline mandatory, but not jurisdictional. So the government withdrew its prior argument that Alonso's petition was untimely, conceding that this argument was forfeited because the government failed to raise it in its merits briefing and at oral argument in this case. But the government

maintains its position that Alonso's petition was untimely, even if it forfeited this argument.

In response, Alonso agreed that the thirty-day deadline provision, 8 U.S.C. § 1252(b)(1), is not a jurisdictional rule, and therefore subject to waiver and forfeiture. Nonetheless, Alonso contends that we must first decide the threshold question of whether *Ortiz-Alfaro* remains good law; in other words, whether Alonso's petition was timely.

As discussed below, we first agree with the parties and hold that the thirty-day filing deadline under § 1252(b)(1) can no longer be understood as a jurisdictional rule after *Santos-Zacaria*. Second, although the government forfeited and affirmatively waived the question of when the thirty-day deadline is triggered, we exercise our discretion to reach the issue. We do so because the issue is fully briefed, our court has expended significant time and resources on it, and resolving the issue is of great public importance to the many petitioners similarly situated. *Nuelsen v. Sorensen*, 293 F.2d 454, 462 (9th Cir. 1961) (noting that we may reach a forfeited issue "where injustice might otherwise result or where public policy requires"); *Thompson v. Runnels*, 705 F.3d 1089, 1100 (9th Cir. 2013) (explaining that we "do not abuse our discretion in addressing" a legal issue that was arguably waived or forfeited when the parties had the "opportunity to brief" it). We hold that we remain bound by *Ortiz-Alfaro*—the thirty-day deadline for filing a petition for review is triggered upon the completion of reasonable fear proceedings. So, Alonso's petition was timely.

## A.

We first consider whether 8 U.S.C. § 1252(b)(1), the thirty-day filing deadline, is a jurisdictional or a mandatory rule. This distinction is important. A mandatory rule

"govern[s] how courts and litigants operate within" the bounds of a court's authority to adjudicate cases. *Santos-Zacaria*, 598 U.S. at 416. By contrast, a jurisdictional rule sets the bounds of a court's authority to adjudicate cases and has "[h]arsh consequences." *Id*. (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019)). "[B]ecause courts are not able to exceed limits on their adjudicative authority, they cannot grant equitable exceptions to jurisdictional rules" and must strictly enforce them sua sponte at any time in the litigation. *Id*.

The Supreme Court and this court have previously treated 8 U.S.C. § 1252(b)(1) as a jurisdictional rule. In *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995), the Supreme Court noted that "judicial review provisions . . . are jurisdictional in nature and must be construed with strict fidelity to their terms." *Id*. at 405. In *Magtanong v. Gonzales*, we relied on *Stone* to clarify that "[t]he provision establishing the 30–day filing period[, § 1252(b)(1),] is mandatory and jurisdictional." 494 F.3d at 1191.

But in *Santos-Zacaria*, the Supreme Court clarified that *Stone* is no longer dispositive as to the question of whether judicial review provisions are jurisdictional, rather than mandatory, rules. 598 U.S. at 421. The Court analyzed whether the exhaustion requirement in 8 U.S.C. § 1252(d)(1) was jurisdictional. *Id.* at 413. The government argued, in part, that the exhaustion requirement at issue was a jurisdictional rule because *Stone* had "described portions of the [INA] that contained § 1252(d)(1)'s predecessor as 'jurisdictional.'" *Id*. at 422. The Court explained, however, that *Stone* predated cases that "br[ought] some discipline to the use of the term jurisdictional," *Id*. at 421 (cleaned up) (referencing *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), as the start of this trend), under which "we treat a rule as

jurisdictional only if Congress clearly states that it is," *Id*. at 416.

The Supreme Court emphasized that, unlike in § 1252(d)(1)'s exhaustion provision, Congress spoke in plain jurisdictional terms elsewhere in § 1252. *Id*. at 418. Indeed, other provisions of § 1252 and other laws governing immigration, Congress specified that "no court shall have jurisdiction" to review certain matters. *Id*. at 418−19 & n.5 (citing 8 U.S.C. §§ 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (b)(9), (g), 1182(a)(9)(B)(v), (d)(3)(B)(i), (d)(12), (h), (i)(2), 1158(a)(3), 1227(a)(3) (C)(ii), 1229c(f), 1255a(f)(4)(C) and 1225(b)(1)(D)). The exhaustion provision, on the other hand, lacked such jurisdictional language. *Id*. at 419.

Here, as the parties recognize, the thirty-day deadline provision, § 1252(b)(1), suffers from the same flaw. The thirty-day deadline provision is contained within the same statute as the exhaustion provision deemed non-jurisdictional in *Santos-Zacaria*, and similarly lacks plainly jurisdictional language. So, although we previously relied on *Stone* to hold that § 1252(b)(1) was a jurisdictional rule, that reasoning is now "clearly irreconcilable" with the Supreme Court's intervening reasoning in *Santos-Zacaria*. *Miller*, 335 F.3d at 900 (holding that three-judge panels must follow circuit precedent unless it is "clearly irreconcilable" with intervening higher authority). We therefore hold today that the thirty-day deadline provision, § 1252(b)(1), is a non-jurisdictional rule.[3]

---

[3] Though the parties dispute whether § 1252(b)(1) is subject to equitable tolling if it is a non-jurisdictional rule, we need not and do not decide that dispute today because Alonso's petition was timely absent any tolling.

**B.**

Next, we consider whether our holding in *Ortiz-Alfaro* that, for purposes of the thirty-day filing deadline, a reinstated order of removal becomes final upon the conclusion of reasonable fear proceedings, remains good law.

**1.**

In *Ortiz-Alfaro*, DHS reinstated the petitioner's prior order of removal and referred him to an asylum officer for a reasonable fear interview after the petitioner expressed a fear of persecution and torture. 694 F.3d at 957. After the asylum officer concluded Ortiz did not have a reasonable fear, Ortiz requested that an IJ review that determination. *Id*. But prior to the IJ's review, Ortiz filed a petition for review challenging the agency's reasonable fear regulations because they barred asylum relief. *Id*. The government asked us to dismiss Ortiz's petition, arguing that we lacked jurisdiction because DHS could not execute Ortiz's reinstated removal order until the reasonable fear proceedings were complete. *Id*. Contrary to its position here today, the government then argued that the reinstated removal order was not yet final for judicial review. *Id*. (first alteration in original).

Reviewing the relevant statutes, we agreed with the government. *Id*. at 958. We explained that finality of a reinstated removal order is usually defined by 8 U.S.C. § 1101(a)(47), which states that removal orders become final "upon the earlier of—(i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the [noncitizen] is permitted to seek review of such order by the [BIA]." *Id*. But this statutory definition "[did] not dictate a clear answer" on whether Ortiz's reinstated

removal order was final, "because there is no way to appeal the reinstatement of a removal order to the BIA." *Id*. (citing 8 C.F.R. § 241.8).

We then proceeded to consider the constitutional implications of concluding that a reinstated removal order became final on the date of Ortiz's reinstatement, as opposed to the date on which the reasonable fear proceedings were completed. *Id*. We recognized that "[t]he point at which a removal order becomes final is critical for the purposes of timely petitioning for judicial review," because a "'petition for review must be filed no later than thirty days after the date of the final order of removal.'" *Id*. (quoting 8 U.S.C. § 1252(b)(1)). So, if we had concluded the reinstated removal order was final upon reinstatement, then the thirty-day deadline for review would have expired long before "any yet-to-be-issued IJ decisions denying Ortiz relief or finding that he lacks a reasonable fear of persecution." *Id*. And depriving Ortiz of the opportunity for judicial review "could raise serious constitutional concerns" as "the Suspension Clause 'unquestionably' requires some judicial intervention in deportation cases.'" *Id*. (quoting *Lolong v. Gonzales,* 484 F.3d 1173, 1177 (9th Cir. 2007) (en banc)). Accordingly, we held that a reinstated order of removal order becomes final only *after* reasonable fear proceedings have concluded. *Id*.

## 2.

In the decade following *Ortiz-Alfaro*, each of our sister circuits that reviewed these petitions likewise considered reinstated orders of removal as final upon the completion of reasonable fear proceedings. *See, e.g.*, *Garcia v. Sessions*, 856 F.3d 27, 35 (1st Cir. 2017); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 144 (2d Cir. 2008); *Bonilla v. Sessions*, 891

F.3d 87, 90 n.4 (3d Cir. 2018); *Tomas-Ramos v. Garland*, 24 F.4th 973, 980 n.3 (4th Cir. 2022); *Ponce-Osorio v. Johnson*, 824 F.3d 502, 506 (5th Cir. 2016); *Garcia v. Barr*, 946 F.3d 371, 375–76 (7th Cir. 2019); *Lara-Nieto v. Barr*, 945 F.3d 1054, 1058 (8th Cir. 2019); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185 (10th Cir. 2015); *Jimenez-Morales v. U.S. Atty Gen.*, 821 F.3d 1307, 1308 (11th Cir. 2016); *see also Zaya v. Garland*, No. 20-3815, 2021 WL 4452422, at *1 (6th Cir. Sept. 29, 2021). And the government long embraced that position, conceding that a reinstated removal order cannot be executed until reasonable fear proceedings are completed. This consensus continued until the Second Circuit recently decided to unilaterally depart from it despite the petitioner's and the government's insistence that the court had jurisdiction.[4] *Bhaktibhai-Patel*, 32 F.4th at 187; *see id.* at 191, 195 (impliedly overruling *Garcia-Villeda*, 531 F.3d at 150, to the extent it suggested that reinstated orders of removal are final upon the completion of reasonable fear proceedings).

To date, the Second, Third, and Fifth Circuits have interpreted the Supreme Court's reasoning in *Nasrallah* and *Guzman Chavez* as precluding judicial review of a petition of review that is filed within thirty days of the completion of reasonable fear proceedings, but more than thirty days from when the order of removal is reinstated. *See Farooq v. Att'y Gen. United States*, No. 20-2950, 2023 WL 1813597, at *2−3 (3d Cir. Feb. 8, 2023); *Argueta-Hernandez v. Garland*,

---

[4] *Bhaktibhai-Patel* and all other decisions from courts of appeal regarding the timeliness of petitions for review like Alonso's were issued under the assumption that 8 U.S.C. § 1252(b)(1) was a jurisdictional rule. But because our holding in *Ortiz-Alfaro* regarding the thirty-day deadline was not dependent on 8 U.S.C. § 1252(b)(1) being a jurisdictional rule, it does not change our analysis.

73 F.4th 300, 303 (5th Cir. 2023) (overruling *Ponce-Osorio*, 824 F.3d at 506). The Tenth Circuit, on the other hand, held that neither "*Nasrallah* [n]or *Guzman Chavez* clearly overruled *Luna-Garcia*," its prior decision holding the same as we did in *Ortiz-Alfaro*. *Arostegui-Maldonado v. Garland*, 75 F.4th 1132 (10th Cir. 2023). Similarly, the Sixth Circuit has also held that its circuit precedent treating orders denying withholding of removal as final orders of removal for judicial review was not "clearly irreconcilable" with *Nasrallah* and *Guzman Chavez*. *Kolov v. Garland*, No. 22-3670, 2023 WL 5319751, at *3 (Aug. 18, 2023). We agree with the Sixth and Tenth Circuits.

At first glance, there appears to be some tension between our holding in *Ortiz-Alfaro* and the Supreme Court's holdings in *Nasrallah* and *Guzman Chavez*. But a closer inspection of the holdings in each case reveals the government cannot meet the high "clearly irreconcilable" standard established in *Miller*, and *Ortiz-Alfaro* can be reconciled with these Supreme Court cases. *See Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (explaining that "mere tension between cases does not meet the high standard of irreconcilable conflict"). So, *Ortiz-Alfaro* continues to provide the correct rule for when a reinstated order becomes final under 8 U.S.C. § 1252(b)(1).

### i.

In *Nasrallah*, the Supreme Court addressed only "the narrow question [of] whether, in a case involving a noncitizen who committed a crime specified in § 1252(a)(2)(C), the court of appeals should review the noncitizen's factual challenges to the CAT order (i) not at all or (ii) deferentially." 140 S. Ct. at 1688. *Nasrallah* did not

address the question presented here—the point at which a reinstated removal order becomes final for purposes of calculating the time to petition for review. In fact, *Nasrallah* did not involve reinstated removal orders or reasonable fear proceedings at all.

There, the government sought to remove the petitioner after he pled guilty to receiving stolen property, which is a removable crime under 8 U.S.C. § 1227(a)(2)(A)(i). *Id.* The IJ ordered Nasrallah removed but granted CAT relief. *Id.* On appeal, the BIA vacated the grant of CAT relief. *Id.* The Eleventh Circuit declined to review Nasrallah's factual challenges to the CAT order because Nasrallah was convicted of a crime under 8 U.S.C. § 1227(a)(2)(A)(i), and 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of factual challenges to a "final order of removal" for noncitizens convicted of such crimes. *Id.* at 1689.

The Supreme Court expressed concern with the government's position that § 1252(a)(2)(C) precludes judicial review of a noncitizen's factual challenges to a CAT order. *Id.* at 1692. So, the Court proceeded to conclude that CAT orders "are not the same as final orders of removal." *Id.* at 1691. But the Court clarified that its conclusion that "[t]he CAT order . . . does not merge into the final order of removal" was "*for purposes* of §§ 1252(a)(2)(C)–(D)'s limitation on the scope of judicial review." *Id.* at 1692 (emphasis added). In other words, the Supreme Court's conclusion was limited to answering the narrow question before it regarding judicial review of removal orders from noncitizens convicted of crimes listed in § 1252(a)(2)(C). And the Court reached this conclusion largely to avoid precluding judicial review where Congress had not explicitly precluded such review. *Id.* at 1692 ("It would be easy enough for Congress to preclude judicial review of factual

challenges to CAT orders . . . [,] [b]ut Congress has not done so, and it is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President.").

*Nasrallah* and *Ortiz-Alfaro* can thus be neatly reconciled. *Nasrallah* was focused on a narrow question that did not encompass reasonable fear regulations or reinstated orders of removal, both of which are essential to the issue before us. And Nasrallah's CAT removal order was subject to BIA review, unlike Alonso's reinstated removal order, whose finality is unclear under 8 U.S.C. § 1101(a)(47) because there is no BIA review for an IJ's negative reasonable fear determination. 8 C.F.R. § 1208.31(g)(1). Cases that do not "squarely address" an issue do not bind us. *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Moreover, at its core, *Nasrallah* stands for the principle that judicial review should not be precluded unless Congress explicitly precludes such review. *See* 140 S. Ct. at 1692. The same principle underlies our opinion in *Ortiz-Alfaro*. Applying *Nasrallah* as the Second Circuit did—to preclude judicial review where Congress has not explicitly done so—perverts that well-established principle.

### ii.

The Supreme Court likewise did not squarely address the issue presented here in *Guzman Chavez*. And the Court's holding in *Guzman Chavez* is even more easily distinguishable from *Ortiz-Alfaro* than is *Nasrallah*. Though *Guzman Chavez* involved reinstated removal orders, the Court there was concerned only with when an order becomes final for purposes of *detention*—not for purposes of judicial review. *Guzman Chavez*, 141 S. Ct. at 2280. We have previously held that when an order becomes final for

purposes of detention and when it becomes final for purposes of judicial review are two separate inquiries. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017) ("Our own decision[] in *Ortiz-Alfaro* . . . which addressed finality for judicial-review purposes and turned principally on avoiding a construction that would severely inhibit or eliminate that review, [is] not controlling in the detention context.").

In *Guzman Chavez*, the respondents were noncitizens detained after their prior removal orders were reinstated. 141 S. Ct. at 2283. Each respondent expressed a fear of returning to their home country, so the government placed each respondent in reasonable fear proceedings. *Id*. In each case, the asylum officer determined the respondent had a reasonable fear of persecution or torture and referred the respondent to an immigration judge for withholding-only proceedings. *Id*. The respondents sought release on bond while their withholding-only proceedings were pending. *Id*. The government opposed release, maintaining that the respondents were not entitled to bond hearings because they were detained under 8 U.S.C. § 1231, not § 1226. *Id*. Arguing that § 1226 governed their detention, the respondents filed petitions for writs of habeas corpus and sought an injunction. *Id*. The district court and the Fourth Circuit agreed with the respondents.

The Supreme Court granted certiorari to resolve a circuit split on the following question: which detention provision applies to noncitizens who are subject to reinstated orders of removal and who are detained while in withholding-only proceedings. *Id*. at 2280. In addressing one of the respondents' arguments, the Supreme Court relied on language in *Nasrallah* stating that "the validity of removal orders is not affected by the grant of withholding-only relief"

and therefore that a grant of withholding "does not render non-final an otherwise 'administratively final' reinstated order of removal." *Id*. at 2288. Viewed in isolation, this language appears to contradict our reasoning in *Ortiz-Alfaro*. Indeed, this language appears to indicate that the finality of a removal order is not impacted by an IJ's grant of withholding of removal. But the Supreme Court explicitly clarified that its *Guzman Chavez* holding "express[ed] no view on whether the lower courts are correct in their interpretation of § 1252, which uses different language than § 1231 and relates to judicial review of removal orders rather than detention*." Id*. at 2285 n.6. Section 1252 is the only relevant section at issue here, and *Guzman Chavez* explicitly left it unaffected.

Not only did the Supreme Court cabin its holding in *Guzman Chavez* to the finality of a removal order for purposes of detention, as opposed to judicial review, but in resolving the circuit split on that issue, the Supreme Court sided with our precedent. *Id*. at 2284. In *Padilla-Ramirez*, we held that a noncitizen in reasonable fear proceedings is subject to detention under § 1231 because the reinstated order is final for detention purposes. We explained that such a holding was fully consistent with our holding in *Ortiz-Alfaro* that the same reinstated order is *not* final for judicial review while reasonable fear proceedings are pending. *Padilla-Ramirez*, 882 F.3d at 833–34. The *Padilla-Ramirez* petitioner, like the *Guzman Chavez* respondents, was subject to a reinstated removal order and was detained while awaiting withholding-only proceedings after an asylum officer determined Padilla-Ramirez had stated a reasonable fear. *Id.* at 829. Padilla-Ramirez argued that he was detained pursuant to § 1226, rather than § 1231, and was therefore entitled to bond hearings. *Id*. In making this

argument, Padilla-Ramirez relied on *Ortiz-Alfaro* to argue his removal order was not final while his reasonable fear proceedings were still pending. *Id*. at 833.

In rejecting his argument, we noted: "At first blush, *Ortiz-Alfaro* appears to support Padilla-Ramirez's position. But the case is readily distinguishable because its holding rested on the canon of constitutional avoidance." *Id*. We recognized that *Ortiz-Alfaro* addressed the finality of reinstated orders for purpose of judicial review and was decided "in large part to preserve the petitioners' ability to obtain such review." *Id*. at 834. And we concluded that our decision in *Ortiz-Alfaro* "was not controlling in the detention context" because Congress had explicitly immunized reinstated orders from judicial review in that context. *Id*. at 836 (citing 8 U.S.C. § 1231(a)(5)).

*Padilla-Ramirez* thus demonstrates how *Ortiz-Alfaro* and *Guzman Chavez* can co-exist. *Guzman Chavez*—which, like *Padilla-Ramirez*, was limited to the detention context— is not controlling in the judicial review context, and therefore does not undermine our holding in *Ortiz-Alfaro*. In sum, because *Nasrallah* and *Guzman Chavez* can be applied consistently with our holding in *Ortiz-Alfaro*, we continue to adhere to that holding. *See Consumer Def.*, 926 F.3d at 1214.

### 3.

We also decline to adopt the Second Circuit's interpretation in *Bhaktibhai-Patel* because doing so would raise grave constitutional concerns.

It is well-established that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing a line of Supreme Court cases reflecting this principle spanning from 1886 to the present). The Supreme Court has long recognized that "though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and . . . is a penalty—at times a most serious one." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (cleaned up). For this reason, embedded in the Due Process Clause is the guarantee that "immigration proceedings meet basic standards of procedural fairness." *Montes-Lopez v. Holder*, 694 F.3d 1085, 1088–89 (9th Cir. 2012).

We have previously determined whether the regulations governing the reasonable fear proceedings violate due process. *See e.g.*, *Alvarado-Herrera*, 993 F.3d at 1192–95. Part of our consideration in holding that these regulations comport with due process was the fact that "[a] non-citizen who receives an adverse determination from the asylum officer is entitled to seek de novo review of that determination before an immigration judge, *and an adverse decision by the immigration judge is subject to an additional layer of review in the court of appeals*." *Id.* at 1195 (emphasis added). We concluded that this additional layer of review "reduce[s] the risk that meritorious claims will be erroneously rejected at the screening stage." *Id.*; *see also Orozco-Lopez v. Garland*, 11 F.4th 764, 778 (9th Cir. 2021) (concluding that the limited role of counsel in reasonable fear proceedings was proper, in part because "if the IJ affirms the asylum officer's negative fear determination, a non-citizen can seek review by a circuit court of appeals where she . . . can be represented by a lawyer").

At risk today is that additional layer of review. Indeed, in *Bhaktibhai-Patel*, the Second Circuit acknowledged that

its holding "forecloses judicial review of agency decisions in [reasonable fear] proceedings in some cases." 32 F.4th at 187–88. As Alonso notes, this holding "effectively cuts off judicial review for all noncitizens in reasonable fear proceedings, because they will almost never receive a final adjudication of their fear claims within 30 days of the date their removal orders are reinstated." This is precisely the problem we sought to avoid in *Ortiz-Alfaro*.[5]

Seemingly recognizing the gravity of the wholesale elimination of judicial review of virtually all withholding-only decisions in *Bhaktibhai-Patel*, the government initially suggested a workaround to the Second Circuit's holding. Prior to asserting that it had forfeited its argument that Alonso's petition was untimely, the government proposed that we adopt only the reasoning of *Bhaktibhai-Patel* but then determine that petitioners may timely file petitions

---

[5] The Second Circuit contends that our concern that the Suspension Clause requires some judicial intervention in deportation cases is no longer valid because "the Supreme Court . . . has recently confirmed that the Suspension Clause applies only when [a noncitizen] 'contest[s] the lawfulness of [his] restraint' and 'seek[s] release.'" *Bhaktibhai-Patel*, 32 F.4th at 196 (citing *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1969–70 (2020)). We disagree. The Supreme Court has not overruled its "strong presumption in favor of judicial review of administrative action." *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001); *see also Rauda v. Jennings*, 55 F.4th 773, 780 (9th Cir. 2022) (analyzing *Thuraissigiam* and recognizing a limit to judicial review for that petitioner because, unlike here, the petitioner had access to review of his petition and Congress had provided a clear statement in favor of limiting judicial review of his particular challenge). And the Supreme Court in *Nasrallah* embraced this presumption when it refused to preclude judicial review of factual challenges to CAT orders where Congress had not expressly foreclosed such review. 140 S. Ct. at 1692. Our Suspension Clause concerns are just as pronounced today as they were when we decided *Ortiz-Alfaro*, and nothing in *Thuraissigiam* alters them.

within thirty days of the reinstatement order even when their reasonable fear proceedings had not yet concluded.  The government contended that the timely petition for review would "ripen" by the time this court reviews the petition on the merits.

But the government's proposal is unworkable.  Amici's points on this regard are well taken.  Indeed, the government's proposed practice would be immensely resource intensive.  It would lead to an increase in filings, as petitioners would inevitably have to file a petition for review to preserve the possibility of judicial review, even when unsure if they would need to, or even choose to, challenge the decision in the future.  This would require our court to dedicate resources to tracking and closing moot or abandoned petitions.  We would need to establish a system of holding petitions for review in abeyance for years at a time and require parties to inform our court of the progress of its administrative proceedings.    This system would be particularly unfair to pro se noncitizens, who make up the majority of noncitizens in removal proceedings.[6]  These pro se litigants, who often face language and education barriers, would be forced to navigate a confusing system set up to require appeals of decisions not yet made and pay a hefty filing fee that they likely cannot afford, effectively ensuring that they miss their chance at review.

---

[6] *See* Ingrid Eagly, Esq. and Steven Shafer, Esq., *Access to Counsel in Immigration Court*, American Immigration Council, 2 (2016), https://www.americanimmigrationcouncil.org/sites/default/files/researc h/access_to_counsel_in_immigration_court.pdf [https://perma.cc/777W-KEQU] (noting "only 37 percent of all immigrants secured legal representation in their removal cases").

The government's proposal also places too much discretion in the government's own hands. Indeed, the government caveats its proposal by noting that it reserves "the right to object" to a noncitizen's request to hold an initial petition for review in abeyance to allow later reasonable fear proceedings to conclude. And the government noncommittally notes that "it does not anticipate that it will oppose [these] timely requests." The government's weak assurances do little to mitigate the constitutional concerns at issue. Especially since the government makes no further mention of its proposal in its second supplemental brief.

Regardless, the government's proposed complex scheme of filing premature petitions for review would only be necessary if the statutes at issue dictated that petitions must be filed within thirty days of entry of the reinstatement order. But as explained above, they do not. And it is well established that even "when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010) (cleaned up)). The Supreme Court "consistently applie[s]" the presumption of reviewability to immigration statutes. *Guerrero-Lasprilla*, 140 S. Ct. at 1069 (quoting *Kucana*, 558 U.S. at 251).

Although "it would be easy enough for Congress to preclude judicial review" of determinations from reasonable fear proceedings, *Nasrallah*, 140 S. Ct. at 1692, Congress has not provided any indication that it wishes to do so here, where the BIA does not have jurisdiction to review negative reasonable fear determinations. Precluding judicial review

would increase the risk that petitioners' meritorious claims will be erroneously rejected.[7]  And "it is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President."  *Id*.  We will therefore not deny petitioners access to judicial review, when Congress has not expressly instructed us to do so.

## IV.

We next address Alonso's contention that the reasonable fear screening regulations, 8 C.F.R. §§ 208.31, 1208.31, are inconsistent with the statutory scheme for determining eligibility for withholding of removal.

Specifically, Alonso contends that because withholding of removal is a mandatory form of relief that requires a "trier of fact" to make credibility determinations, 8 U.S.C. § 1231(b)(3)(C), the reasonable fear regulations, 8 C.F.R. §§ 208.31, 1208.31, curtail that right by requiring a pre-screening process for noncitizens in reasonable fear proceedings.  Alonso does not challenge the lawfulness of the screening interview with respect to CAT relief.

To determine whether a regulation is inconsistent with a statutory scheme, we apply the two-step framework established in *Chevron, U.S.A. Inc. v. National Resources*

---

[7] As Amici point out, asylum officers, IJs, and the BIA frequently make substantive and procedural errors in assessing claims in reasonable fear proceedings.  *See e.g.*, *Zuniga v. Barr*, 946 F.3d 464, 471 (9th Cir. 2019) (per curiam) (determining that the petitioner was deprived of right to counsel).  Review in the courts of appeal is thus essential to the proper, constitutional functioning of this system.

*Defense Council, Inc.*, 467 U.S. 837 (1984).**[8]** At step one, we consider "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the intent of Congress is clear, we give effect to that intent. *Id.* If the statute is "silent or ambiguous" with respect to the question at issue, we ask, at step two, whether the agency's regulation "is based on a permissible construction of the statute." *Id.* at 843.

In *Alvarado-Herrera*, we applied *Chevron* and held that the reasonable fear screening process is statutorily authorized with respect to both statutory withholding of removal and CAT relief. *See* 993 F.3d at 1192–95. Alonso attempts to distinguish his arguments from those raised by the petitioner in *Alvarado-Herrera*. He contends that we have not previously considered the language of two statutory provisions.

Cases are "not precedential for propositions not considered." *United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018). Thus, "if a prior case does not raise or consider the implications of a legal argument, it does not constrain our analysis." *Kirilyuk*, 29 F.4th at 1134 (citation and internal quotation marks omitted). But Alonso's arguments with respect to the two statutory provisions he flags—the mandatory language of § 1231(b)(3)(A) and the "trier of

---

[8] Although the future of the *Chevron* doctrine is uncertain, *see Loper Bright Enters. v. Raimondo*, No. 22-451, 2023 WL 3158352, at *1 (U.S. May 1, 2023) (granting certiorari on "[w]hether the Court should overrule *Chevron* or . . . at least clarify that statutory silence concerning controversial powers expressly but narrowly granted elsewhere in the statute does not constitute an ambiguity requiring deference to the agency"), the doctrine remains good law for now.

fact" language in § 1231(b)(3)(C)—do not support a departure from our holding in *Alvarado-Herrera*.

First, Alonso points to the broad language of 8 U.S.C. § 1231(b)(3)(A), which provides: "Notwithstanding paragraphs (1) and (2), the Attorney General may not remove a[] [noncitizen] to a country if the Attorney General decides that the [noncitizen]'s life or freedom would be threatened in that country because of the [noncitizen]'s race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Alonso argues that had Congress intended to limit some noncitizens' ability to apply for withholding of removal by requiring a screening process with an asylum officer, it would have done so explicitly, as it has with credible fear determinations for noncitizens subject to expedited removal. *Cf. id*. § 1225(b).

Second, Alonso relies on the language of 8 U.S.C. § 1231(b)(3)(C), which provides:

> In determining whether a[] [noncitizen] has demonstrated that the [noncitizen]'s life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the noncitizen has sustained the noncitizen's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.

*Id*. § 1231(b)(3)(C). Clause (ii) of § 1158(b)(1)(B) provides that noncitizens may, under certain conditions, carry their burden of proof with testimony alone. Clause (iii) describes

permissible grounds for credibility determinations. *See id.* §§ 1158(b)(1)(B)(ii), (iii). Alonso argues that the reference to a "trier of fact" in § 1231(b)(3)(C) reflects Congress's intent to allow noncitizens to apply directly to an IJ for withholding of removal, without first undergoing a screening interview by an asylum officer.

These arguments are unpersuasive. In *Alvarado-Herrera*, we concluded that "the most that can be said at step one of the *Chevron* analysis is that § 1231(a)(5)," the statute authorizing reinstatement, is "'silent or ambiguous' as to whether all non-citizens are entitled to a hearing before an immigration judge on claims for withholding of removal and protection under CAT." 993 F.3d at 1193 (quoting *Chevron*, 467 U.S. at 843). We reasoned that the sweeping language in § 1231(a)(5) suggests "no need for any hearings before an immigration judge," even though courts have held that "non-citizens in [reasonable fear] proceedings are eligible for withholding of removal under § 1231(b)(3)(A), notwithstanding the language of § 1231(a)(5)." *Id.* (citing *Fernandez-Vargas*, 548 U.S. at 35 n.4, and *Andrade-Garcia*, 828 F.3d at 831–32) (emphasis removed). Thus, the language of § 1231(b)(3)(A) does not undermine our decision in *Alvarado-Herrera*, because we considered that precise language in reaching our holding. *Cf. Pepe*, 895 F.3d at 688.

Nor does the "trier of fact" language in § 1231(b)(3)(C) undermine *Alvarado-Herrera*. Alonso contends that the language suggests that noncitizens are entitled to present their claim for withholding of removal to an IJ rather than an asylum officer. But even if we were to suppose that Congress did intend the term "trier of fact" to refer to an IJ and not an asylum officer, the reasonable fear regulations provide for de novo determination by an IJ of the merits of

all noncitizens' withholding-only claims. If noncitizens receive a negative reasonable fear determination, they are entitled to a de novo review of that determination by an IJ. 8 C.F.R. §§ 208.31(g), 1208.31(g); *see Bartolome*, 904 F.3d at 812. And if noncitizens receive a positive reasonable fear determination by an asylum officer, they are entitled to full-fledged withholding-only proceedings before an IJ. 8 C.F.R. §§ 208.31(e), 1208.31(e). The regulations therefore comport with Congress's requirement that petitioners have their credibility determination reviewed by a "trier of fact."

Alonso's arguments do not undermine our analysis in *Alvarado-Herrera*. We follow *Alvarado-Herrera* and hold that the reasonable fear screening process is consistent with the statutory provisions.

## V.

In sum, we conclude that the thirty-day deadline provision is a non-jurisdictional rule, and that *Ortiz-Alfaro* remains valid precedent, so the thirty-day deadline commences upon the conclusion of reasonable fear proceedings. Alonso's petition for review was therefore timely. On the merits, we deny Alonso's petition for review.

**PETITION DENIED.**