**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ERIC BLANCAS HERMOSILLO,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 18-71220

Agency No.
A078-086-020

OPINION

On Petition for Review of an Order of an
Immigration Judge

Argued and Submitted on October 3, 2022
Seattle, Washington

Filed September 14, 2023

Before: William A. Fletcher, Mark J. Bennett, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Sung;
Partial Dissent by Judge Bennett

# SUMMARY[*]

## Immigration

Granting Eric Blancas Hermosillo's petition for review of an immigration judge's decision upholding an asylum officer's negative reasonable fear determination following the reinstatement of a prior order of removal, and remanding, the panel held that Blancas Hermosillo's own credible testimony sufficiently established a reasonable fear of persecution or torture to warrant a hearing before an IJ on the merits of his claims for relief.

Blancas Hermosillo credibly testified that three cartels seek to control the region around his hometown in Mexico, and Autodefensa, a local community defense group, fights to prevent cartel influence. As part of the conflict, the cartels carry out weekly attacks to kill Autodefensa members, and target families of community defense members to erode resistance to cartel control. One of Blancas Hermosillo's uncles is the leader of Autodefensa; his father and three other uncles are or were (before they were killed) members. Blancas Hermosillo fears that, if removed to Mexico, the cartels will discover his identity as a relative of Autodefensa members and harm or kill him.

The IJ determined that Blancas Hermosillo did not show a causal link between his own family ties and potential persecution because the record showed only that the cartels targeted Blancas Hermosillo's uncles because of their own membership in Autodefensa, not their familial relationship

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to Autodefensa members. The panel concluded that the IJ's decision suffered from two problems. First, it ignored the possibility that the cartels acted with mixed motives, where Blancas Hermosillo credibly testified that he believed the cartels targeted one of his uncles both because of that uncle's own membership in Autodefensa, and to deter Blancas Hermosillo's other uncle who was the leader of Autodefensa. The panel wrote that these circumstances supported the inference that Blancas Hermosillo's uncle was killed, at least in part, because of his relationship to the other uncle. Second, the panel explained that Blancas Hermosillo need not show that his uncles experienced persecution on the basis of their family membership in order to show that Blancas Hermosillo himself might experience persecution as a relative of Autodefensa members.

The panel rejected the government's argument that Blancas Hermosillo's claim is too speculative to establish a reasonable fear of persecution or torture, explaining that Blancas Hermosillo's evidence is exactly what one might expect at this preliminary screening stage: a credible account that cartels target relatives of Autodefensa members supported by testimonial evidence and backed by the representation that additional evidence exists to support those assertions. The panel explained that Blancas Hermosillo's credible assertions of cartel knowledge, practices, and motivations are sufficient evidence of such facts and must be accepted as true, that any reasonable adjudicator would be compelled to conclude that Blancas Hermosillo would face a reasonable possibility of persecution because of his family relationship to Autodefensa members, and that a public official would acquiesce to his torture. The panel remanded with instructions for the agency to provide Blancas Hermosillo

with a hearing before an IJ on the merits of his claims for withholding of removal and CAT protection.

Dissenting in part, Judge Bennett agreed with the majority's decision to grant the petition as to the IJ's finding that Blancas Hermosillo lacks a reasonable fear of torture, but disagreed that the evidence compelled the conclusion that there is a reasonable possibility Blancas Hermosillo would be persecuted on account of his familial relationship to Autodefensa members. Judge Bennett wrote that the majority reached the opposite conclusion by failing to apply the required deferential substantial evidence standard.

## COUNSEL

Zulu Ali (argued), Law Offices of Zulu Ali, Riverside, California, for Petitioner.

Joanna L. Watson (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, Washington, D.C.; for Respondent.

## OPINION

SUNG, Circuit Judge:

In 2018, the Department of Homeland Security (DHS) reinstated a 1999 removal order entered against Petitioner Eric Blancas Hermosillo. Because Blancas Hermosillo expressed a fear of returning to Mexico, an asylum officer conducted a reasonable fear screening interview to determine whether Blancas Hermosillo should be given the opportunity to establish his claims at a merits hearing before an Immigration Judge (IJ) on his application for withholding of removal and relief under the Convention Against Torture (CAT). The asylum officer determined, and an IJ affirmed, that Blancas Hermosillo did not show a reasonable possibility of persecution or torture were he to be removed. Consequently, Blancas Hermosillo never had the opportunity to present additional evidence of his claims at a merits hearing.

Blancas Hermosillo now petitions for review of the IJ's negative reasonable fear determination at the screening stage. We agree with Blancas Hermosillo that his own credible testimony is enough at this initial stage to establish a reasonable fear of persecution and torture; substantial evidence does not support the agency determination otherwise. We grant the petition for review and remand so that Blancas Hermosillo may receive a merits hearing.

## I.

Blancas Hermosillo, a native and citizen of Mexico, applied for admission to the United States in 1999. DHS served him a Notice and Order of Expedited Removal, and he was deported the following day. Blancas Hermosillo later

reentered without inspection. In 2018, he was arrested by Immigration and Customs Enforcement (ICE), and DHS reinstated his 1999 removal order.

Congress authorized reinstatement of prior removal orders to provide the government a streamlined process for removing noncitizens who unlawfully return to the United States after a previous removal. 8 U.S.C. § 1231(a)(5). The statute limits a noncitizen's ability to challenge a reinstated removal order; it provides that the prior order "is not subject to being reopened or reviewed, the [noncitizen] is not eligible and may not apply for any relief under this chapter, and the [noncitizen] shall be removed under the prior order at any time after the reentry." *Id.*

Although the reinstatement statute on its face bars noncitizens from seeking immigration relief, DHS regulations carve out an exception: noncitizens who express a fear of persecution or torture in their country of removal may apply for withholding of removal or protection under the Convention Against Torture. 8 C.F.R. § 208.31. When a noncitizen expresses that kind of fear, an asylum officer must perform a screening interview to determine whether the noncitizen's fear is reasonable. 8 C.F.R. §§ 208.31(b) & (c), 1208.31(b) & (c).

Noncitizens show a reasonable fear of persecution if they establish "a reasonable possibility that [they] would be persecuted on account of [their] race, religion, nationality, membership in a particular social group or political opinion." 8 C.F.R. §§ 208.31(c), 1208.31(c). Noncitizens show a reasonable fear of torture if they establish "a reasonable possibility that [they] would be tortured in the country of removal." 8 C.F.R. §§ 208.31(c), 1208.31(c). Under CAT regulations, a person must demonstrate that the

torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003) (quoting 8 C.F.R. § 208.18(a)(1)) (emphasis omitted). "A reasonable possibility" requires a noncitizen to show "at least a ten percent chance of being persecuted or tortured." *Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1195–96 (9th Cir. 2021).

Consistent with the preliminary nature of a screening interview, noncitizens who show a reasonable possibility of persecution or torture do not automatically receive substantive immigration relief. *See Alvarado-Herrera*, 993 F.3d at 1194–95 (recognizing that the limited purpose of screening interviews is "to quickly identify and resolve frivolous claims to protection"). Instead, they receive a merits hearing before an IJ, where they then will receive "full consideration" of their claim. 8 C.F.R. §§ 208.31(e), 1208.31(e). At that hearing, noncitizens bear the burden of proving entitlement to withholding of removal or relief under CAT by showing that they will more likely than not be persecuted or tortured should they be removed. 8 CFR §§ 208.16(b) & (c).

Blancas Hermosillo expressed to immigration officials his fear that cartels would persecute and torture him if he returned to Mexico. Consistent with regulatory requirements, he received a screening interview with an asylum officer 39 days after his arrest.[1] Blancas Hermosillo testified in person about his fear. His counsel attended by

---

[1] Blancas Hermosillo first appeared before an asylum officer 16 days after his arrest, but the asylum officer twice continued Blancas Hermosillo's screening interview so that his attorney could be present.

phone but did not speak. The asylum officer found him credible.

At the time of the screening interview, Blancas Hermosillo was detained without bail, with limited ability to access documents or to gather evidence. At several points throughout his immigration proceedings, Blancas Hermosillo represented that he could produce additional evidence supporting his claims at a merits hearing, including, for example, pictures of what happened to his family members and letters from his relatives.

During the screening interview, Blancas Hermosillo credibly testified to the following facts. Three cartels seek to control the region around Blancas Hermosillo's hometown. Autodefensa, a local community defense group, fights to prevent cartel influence. As part of the conflict, the cartels carry out weekly attacks to kill Autodefensa members. One of Blancas Hermosillo's uncles, J.V.V., is the leader of Autodefensa; his father and three other uncles are or were (before they were killed) members.

Each of Blancas Hermosillo's uncles has experienced violence as a result of their Autodefensa membership. His uncle J.V.V. was attacked by the cartels while driving in a caravan. His uncle G.H. was burned alive by the cartels, which Blancas Hermosillo believes was to deter J.V.V. as the leader of Autodefensa, because of G.H's own Autodefensa membership, or both. Blancas Hermosillo's uncle J.B.G. was shot eight times while patrolling the area to defend against cartel violence. Finally, his uncle E.B.G. was disappeared after a conflict with armed men.

Blancas Hermosillo described how the cartels target families of community defense members to erode resistance to cartel control: "what [the cartels] do is target and kill the

family members of the Autodefensa team to use that fear to discourage them from doing what they are doing." Although Blancas Hermosillo was unsure of exactly why the cartels targeted his uncle G.H., he testified to his general belief that cartels target family members of his uncle J.V.V. in particular because J.V.V. is the leader of Autodefensa: "they will use any member of the family in order to obligate or force my uncle to stop fighting them."

Blancas Hermosillo fears that, if he is removed to Mexico, the cartels will discover his identity as a relative of Autodefensa members "right away" and harm or kill him. Based on information from his family, he believes that the cartels' connections allow them to learn when people are deported from the United States. Blancas Hermosillo also believes that many people who are deported are kidnapped and killed by the cartels shortly after returning to Mexico.

Blancas Hermosillo testified that the local police would be unwilling to protect him from the cartels. His family reported cartel violence to the police around 2012, but the police did not want to get involved because they "were afraid that they would also be killed." Blancas Hermosillo's family did not report cartel violence again to the police because of the widespread belief that the police collaborate with the cartels. Blancas Hermosillo is aware of a family whose father reported a car theft to the police and subsequently was kidnapped by cartels. Blancas Hermosillo believes the police turned the man over to the cartels because the cartels told the man to stop complaining to the police or they would kill him.

Although the asylum officer found Blancas Hermosillo credible, the officer determined that Blancas Hermosillo did not establish a reasonable fear of persecution because the harm he feared did not have a nexus to a protected ground.

Blancas Hermosillo claimed that the cartels would target him because of his relationship to several Autodefensa members. But the asylum officer reasoned that each of Blancas Hermosillo's uncles experienced violence because of their own involvement in Autodefensa instead of their familial relationship to Blancas Hermosillo's uncle J.V.V. The asylum officer concluded that Blancas Hermosillo similarly could not show that any harm he might experience would be because of his relationship to J.V.V.

The asylum officer determined that Blancas Hermosillo did not establish a reasonable fear of torture because, in the asylum officer's view, Blancas Hermosillo did not offer "specific and persuasive evidence" that any public official would consent or acquiesce to his harm. The asylum officer acknowledged that Blancas Hermosillo's credible testimony included some evidence of police acquiescence to cartel violence, but the asylum officer concluded that this evidence was insufficient.

Blancas Hermosillo requested that an IJ review the asylum officer's negative reasonable fear determination, as authorized by 8 C.F.R. §§ 208.31(g) and 1208.31(g). In a one-page form decision, the IJ affirmed the asylum officer's determination. For the asylum claim, the IJ agreed with the asylum officer that Blancas Hermosillo had not established a "nexus between family group membership and [the] harm [his] family members suffered" and, therefore, did not show a nexus between his feared harm and a protected ground. For the CAT relief claim, the IJ affirmed the asylum officer's finding that Blancas Hermosillo did not demonstrate a reasonable fear of torture, but he did not explain why. These affirmances make Blancas Hermosillo's reinstatement order final, 8 C.F.R. § 208.31(g)(1), and subject to review under 8 U.S.C. § 1252(a)(1).

## II.

We review the IJ's rulings for substantial evidence. *See Bartolome v. Sessions*, 904 F.3d 803, 811 (9th Cir. 2018).[2] Under the substantial evidence standard, we uphold the agency's determinations unless, based on the evidence, "any reasonable adjudicator would be compelled to conclude to the contrary." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014).

The Government does not dispute that the harm Blancas Hermosillo fears would constitute (1) persecution if he established nexus (i.e., that the cartels would seek to harm him because of his family relationships); or (2) torture if he established that the police would acquiesce to the cartel's efforts. *See Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009) (finding it "well established that physical violence is persecution"); *Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir. 2008) (finding that "beatings and killings" are "[a]cts constituting torture"). Therefore, the only issues presented are whether Blancas Hermosillo's credible testimony is enough at the screening stage to compel the conclusion that he established nexus and acquiescence sufficient to satisfy the reasonable fear standard. We determine that the record compels the conclusion that Blancas Hermosillo established both. *Alvarado-Herrera*, 993 F.3d at 1195.

\*\*\*

As we have recognized, "the family remains the quintessential particular social group," and a noncitizen

---

[2] Because the IJ affirmed the asylum officer's determination of a claim without explanation, we review the asylum officer's reasoning with respect to torture. *Bartolome*, 904 F.3d at 814 n.11.

"who has suffered persecution 'on account of their familial relationship' has suffered persecution by reason of membership in a particular social group." *Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018) (cleaned up) (citing *Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015)). Blancas Hermosillo's testimony compels the conclusion that there is a reasonable possibility he would be harmed or killed by the cartels because of his familial relationship to the leader of Autodefensa and other Autodefensa members.

Blancas Hermosillo credibly testified that the cartels launch weekly attacks against Autodefensa members. Additionally, to erode resistance, the cartels target the relatives of Autodefensa members, particularly relatives of the Autodefensa leader, Blancas Hermosillo's uncle J.V.V. At merits hearings, petitioners typically establish such practices through expert testimony, country conditions reports, or media reports. But noncitizens in expedited removal proceedings "cannot realistically be expected to produce for the asylum officer's review the kind of detailed country conditions evidence that would be introduced during a merits hearing before an immigration judge." *Alvarado-Herrera*, 993 F.3d at 1196. Thus, at the screening stage, a noncitizen's "own statements can supply adequate support for claims about country conditions, at least for purposes of satisfying the ten percent threshold necessary to pass a reasonable fear screening interview." *Id*. at 1197.

The IJ determined—and the Government argues on appeal—that Blancas Hermosillo did not show a causal link between his own family ties and potential persecution because the record shows only that the cartels targeted Blancas Hermosillo's uncles because of their own membership in Autodefensa, not *their* familial relationship to Autodefensa members. There are two problems with that

argument. First, it ignores the possibility that the cartels acted with mixed motives. Blancas Hermosillo credibly testified that he believes the cartels targeted his uncle G.H. both because of his own membership in Autodefensa *and* to deter Blancas Hermosillo's uncle J.V.V., the leader of Autodefensa. Blancas Hermosillo candidly acknowledged at his screening interview that he had no direct evidence of the cartels' subjective motives. That is not surprising, as "persecutors are hardly likely to provide their victims with affidavits." *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984). Still, the circumstances support the inference that the cartels killed G.H. at least in part because of his relationship to J.V.V. Further, the IJ identified no basis for disregarding that possible inference and instead assumed that the cartels targeted G.H. *exclusively* because of his own membership in Autodefensa.

Second, Blancas Hermosillo does not need to show that his uncles experienced persecution on the basis of their family membership in order to show that he himself might experience persecution as a relative of Autodefensa members. *See* 8 C.F.R. § 208.16(b)(2) (setting out how a petitioner may demonstrate eligibility for withholding of removal through a risk of future persecution)*; see also Sanchez-Chanizalez v. Holder*, 520 F. App'x 528, 530 (9th Cir. 2013) ("This court does not require the petitioner to show that another family member was persecuted on account of a protected ground. Rather, the petitioner need only show that she herself was persecuted because of her status as a family member."). Thus, even assuming all of Blancas Hermosillo's uncles were harmed only because of their Autodefensa memberships and not their familial relationships, that does not foreclose the possibility that

Blancas Hermosillo will experience persecution as a relative of the Autodefensa leader and other members.

The Government also contends that Blancas Hermosillo's claim is too speculative to justify relief. But each case the Government cites involved this court's review of a Board of Immigration Appeals decision issued after a merits hearing. *See Nagoulko v. INS*, 333 F.3d 1012, 1018 (9th Cir. 2003); *Li v. INS*, 92 F.3d 985, 987 (9th Cir. 1996); *Espinoza-Martinez v. INS*, 754 F.2d 1536, 1540 (9th Cir. 1985). Blancas Hermosillo, by contrast, has received no such hearing. Blancas Hermosillo's evidence is exactly what one might expect at the screening stage: a credible account that cartels target relatives of Autodefensa members supported by testimonial evidence and backed by the representation that additional evidence exists to support his assertions. At this stage of the proceedings, Blancas Hermosillo's credible assertions of cartel knowledge, practices, and motivations are sufficient evidence of such facts and must be accepted as true. *See Alvarado-Herrera*, 993 F.3d at 1197. Accepting those facts as true, any reasonable adjudicator would be compelled to conclude that Blancas Hermosillo would face a reasonable possibility of persecution because of his family relationship to Autodefensa members. Because he has offered enough evidence at this preliminary stage to establish a reasonable possibility of persecution, he is entitled to a merits hearing.

\*\*\*

Blancas Hermosillo's testimony similarly establishes, at the screening stage, a reasonable possibility that a public official would acquiesce to his torture. Police unwillingness to address cartel violence constitutes acquiescence. *See Cole v. Holder,* 659 F.3d 762, 771 (9th Cir. 2011) ("Acquiescence

by government officials requires only that they were aware of the torture but remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it.") (cleaned up and internal citation omitted). Blancas Hermosillo credibly testified to both personal and anecdotal evidence that the Mexican police are aware of cartel violence but decline to act because of both corruption and the unwillingness to oppose the cartels.

The Government argues that a single example from 2012 does not compel a finding of acquiescence. But persons fearing torture "need not have reported . . . persecution to the authorities if [they] can convincingly establish that doing so would have been futile or have subjected [them] to further abuse." *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006). Blancas Hermosillo testified that his family did not seek further police assistance out of fear that the police would turn them over to the cartels, and that the cartels kidnapped a man who reported a car theft to the police and threatened to kill him if he complained again.

The asylum officer held that Blancas Hermosillo did not provide "specific and persuasive evidence to establish a reasonable possibility that a public official would consent or acquiesce to his future harm by the cartels." Here, as in *Alvarado-Herrera*, "[i]t is unclear what additional evidence the asylum officer expected [Blancas Hermosillo] to produce at this stage of the proceedings." 993 F.3d at 1196. At the screening stage of the proceedings, Blancas Hermosillo's credible testimony is sufficient evidence of cartel violence and police refusal to intervene, and we accept his testimony as true. *Id*. at 1197. Accepting his testimony as true, any reasonable adjudicator would be compelled to conclude that

Blancas Hermosillo faces a reasonable possibility of torture with government acquiescence.[3]

In sum, we conclude that the negative reasonable fear determinations for persecution and torture are not supported by substantial evidence. We remand this case to the agency with instructions to provide Blancas Hermosillo with a hearing before an IJ on the merits of his claims for withholding of removal and protection under CAT.

**PETITION FOR REVIEW GRANTED AND REMANDED with instructions.**

---

[3] We do not suggest that Blancas Hermosillo is necessarily entitled to withholding or CAT relief. At the merits hearing, he must still provide sufficient evidence to establish each element of his claims.

BENNETT, Circuit Judge, dissenting in part:

I respectfully dissent from the majority's decision to grant the petition as to the immigration judge's (IJ) finding that Eric Blancas Hermosillo lacks a reasonable fear of persecution for failure to establish a nexus to a protected ground.[1]  The substantial evidence standard is "extremely deferential." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003).  Under that standard, we must ask whether the evidence compels the conclusion that there is a reasonable possibility that Blancas Hermosillo would be persecuted because of his familial relationship to Autodefensa members.  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); 8 C.F.R. §§ 208.31(c), 1208.31(c).  Here, a reasonable factfinder could conclude that the record lacks any nonspeculative evidence that family members of Autodefensa members—who are not themselves Autodefensa members—were ever targeted by the cartels.

Blancas Hermosillo mainly relied on the following evidence to support that he would be persecuted on account

---

[1] I agree with the majority's decision to grant the petition as to the IJ's finding that Blancas Hermosillo lacks a reasonable fear of torture. Blancas Hermosillo offered information about a specific instance when his family reported the cartels' violence to the police, and the police said that they did not want to get involved.  He also offered anecdotal evidence of police corruption.  Accepting that information as true, the record compels the conclusion that he established a reasonable possibility of government acquiescence.  *See Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1197 (9th Cir. 2021) (holding that the record compelled a finding of a reasonable possibility of government acquiescence where the petitioner provided a specific account of an attack by gang members who were dressed in police uniforms and displayed police badges, along with anecdotal evidence of police corruption).

of his familial relationship to Autodefensa members: his testimony that (1) the cartels harmed or killed four of his uncles because they were or are active Autodefensa members[2]; and (2) the cartels "target and kill the family members of the Autodefensa team to use that fear to discourage them from doing what they are doing."[3]   A reasonable factfinder could view this evidence as insufficient to meet the reasonable possibility standard.

As the IJ reasonably found, the testimony about Blancas Hermosillo's uncles did not support the claimed nexus because such testimony showed that his uncles were harmed because of "their involvement in Autodefensa and their actions in fighting against the cartels."  The majority rejects the IJ's finding because the evidence "*support*[*s*] *the inference*" that the cartels killed one of Blancas Hermosillo's

[2] His uncle J.V.V., who is the leader of the Autodefensa, was attacked while "defend[ing] the people."  His uncle G.H. was "in charge of the security of the town" and was "burned alive in his car."  Blancas Hermosillo told the asylum officer that G.H. was burned "[b]ecause he [was] part of the Autodefensa team," although he also stated that G.H. was burned to deter J.V.V. as the leader of Autodefensa and then later stated that he did not know why G.H. was targeted.  His uncle Javier B.G. was shot because "the cartels [were] trying to enter" his hometown and he "was trying to defend [the] town."  And his uncle Jose B.G. was shot at because the cartels were "fighting among each other to take control" of his hometown.

[3] The majority suggests that the record shows Blancas Hermosillo could produce additional evidence at a merits hearing. Maj. 8.  The record, however, is not so clear.  Blancas Hermosillo did state that he could provide more evidence during his credible fear interview with the asylum officer and initial appearance before the IJ.  But when asked by the IJ at his reasonable fear hearing whether he had presented all the information to the asylum officer that he wanted to present, Blancas Hermosillo responded only that he would have clarified that the cartels are located throughout the country, not just in his hometown.

uncles, G.H., at least in part because of his relationship to J.V.V. Maj. 13 (emphasis added).

The majority applies the wrong standard. That the evidence *might* support an inference contrary to IJ's is insufficient; we must determine whether the evidence *compels* the conclusion that G.H. was killed because of his relationship to J.V.V. *See Elias-Zacarias*, 502 U.S. at 481 n.1 ("To reverse the [agency's] finding we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it . . . ."); *see also Salguero Sosa v. Garland*, 55 F.4th 1213, 1222 (9th Cir. 2022) (holding that evidence that might support an inference contrary to the agency's was insufficient to reverse under the substantial evidence standard).

While Blancas Hermosillo stated that his uncle G.H. was killed to deter J.V.V. as the leader of Autodefensa, when specifically asked by the asylum officer why the cartel killed G.H., Blancas Hermosillo responded that it was only "[b]ecause he [was] part of the Autodefensa team." Then, when asked for clarification whether G.H. was killed because of his Autodefensa membership or his relationship to J.V.V., Blancas Hermosillo equivocated: "[t]o be honest, I don't know what the real reason was." Given Blancas Hermosillo's lack of certainty, along with the other evidence that the cartels target Autodefensa members, a factfinder could reasonably infer that G.H. was killed only because of his Autodefensa membership. Thus, a factfinder would not be compelled to conclude that the harm to Blancas Hermosillo's uncles supported the claimed nexus.

A factfinder could also reasonably determine that Blancas Hermosillo's conclusory statement that the cartels target family members of Autodefensa members without any

specific details was speculative, and thus insufficient to establish the required nexus. *See Bartolome v. Sessions*, 904 F.3d 803, 814 (9th Cir. 2018) ("Speculation on what could occur is not enough to establish a reasonable fear."). Such evidence was also undercut by Blancas Hermosillo's own testimony that, other than his uncles who had been harmed or killed because of their Autodefensa membership, no other family members had been harmed by the cartels in Mexico. *See Tamang v. Holder*, 598 F.3d 1083, 1094 (9th Cir. 2010) ("We have also held that a petitioner's fear of future persecution 'is weakened, even undercut, when similarly-situated family members' living in the petitioner's home country are *not* harmed." (quoting *Sinha v. Holder*, 564 F.3d 1015, 1022 (9th Cir. 2009))).

Relying on *Alvarado-Herrera v. Garland*, 993 F.3d 1187 (9th Cir. 2021), the majority suggests that the IJ was required to accept Blancas Hermosillo's statement that the cartels target family members of Autodefensa members, regardless of its conclusory nature and any conflicting evidence. Maj. 14. But *Alvarado-Herrera* does not support the majority's position. In *Alvarado-Herrera*, we held that the petitioner's "*specific* assertions of police complicity in the 18th Street gang's violent acts," *id.* at 1196 (emphasis added), along with general anecdotal evidence of police corruption, compelled the conclusion that there was a reasonable possibility he may face torture with government acquiescence, *id.* at 1196–97. We never held that an IJ must accept conclusory assertions that are undermined by other record evidence. Such a rule improperly usurps the IJ's role as factfinder to weigh the evidence. *See Kotasz v. INS*, 31 F.3d 847, 851 (9th Cir. 1994) ("Th[e] strict [substantial evidence] standard bars the reviewing court from independently weighing the evidence . . . .").

A reasonable factfinder could conclude that Blancas Hermosillo offered no nonspeculative evidence that family members of Autodefensa members—who are not themselves Autodefensa members—were ever targeted by the cartels. Thus, the IJ reasonably determined that the evidence failed to establish a reasonable possibility that Blancas Hermosillo would be persecuted on account of his familial relationship to Autodefensa members.

*            *            *

The evidence does not compel a conclusion that there is a reasonable possibility that Blancas Hermosillo would be persecuted on account of his familial relationship to Autodefensa members. The majority reaches the opposite conclusion because it fails to apply the required deferential substantial evidence standard. I therefore dissent from the majority's decision to grant the petition as to the IJ's no-reasonable-fear-of-persecution determination.